# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

|  |  |
|---|---|
| BRAD PATTERSON, on behalf of himself and others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>OPTUMRX, INC.,<br><br>          Defendant. | Civil Case No.: 1:24-cv-689-TWP-KMB |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### Introduction

Brad Patterson ("Plaintiff") alleges, on behalf of himself and a class of similarly situated persons, that OptumRx, Inc. ("Defendant") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by using an artificial or prerecorded voice in connection with calls it placed to cellular phone numbers, absent prior express consent. Defendant denies Plaintiff's material allegations, or that it violated the TCPA when contacting Plaintiff and the settlement class members.

After sixteen months of litigation, and as a result of the parties' arm's-length negotiations with an experienced mediator, the Honorable Diane M. Welsh (Ret.) of JAMS, Plaintiff and Defendant agreed to resolve this matter on behalf of the following settlement class:

> All persons throughout the United States (1) to whom OptumRx, Inc. placed, or caused to be placed, a clinical adherence call, other than calls regarding prescription refill reminders or calls regarding COVID-19 vaccines, (2) directed to a number assigned to a cellular telephone or VOIP service, but not assigned to an OptumRx, Inc. customer or account holder, (3) in connection with which OptumRx, Inc. used, or caused to be used, an artificial or prerecorded voice, (4) from April 20, 2020 through the date of preliminary approval of the settlement.

## Summary of the Settlement

To compensate settlement class members, Defendant will create, within 30 days after this Court preliminarily approves the settlement, a non-reversionary settlement fund in the amount of $1,860,000. Each settlement class member who timely submits a valid and approved claim form will be entitled to a *pro rata* share of the settlement fund after deducting the costs of notice to potential settlement class members and claims administration; litigation costs and expenses, subject to this Court's approval, reasonable attorneys' fees calculated as a percentage of the settlement fund, subject to this Court's approval, and an incentive award to Plaintiff, subject to this Court's approval.

A third-party claims administrator—Kroll Settlement Administration LLC (the "Administrator")—will mail notice of the settlement directly to potential settlement class members, together with a detachable claim form that settlement class members can use to submit claims. The Administrator will also establish a dedicated settlement website that provides information about the settlement, and through which settlement class members can submit claims electronically.

Any class member who wishes to exclude himself or herself from the settlement can submit a request for exclusion. Likewise, any class member who wishes to object to the settlement can submit an objection.

Upon this Court's entry of a final judgment, Plaintiff, and each non-excluded settlement class member, will release and forever discharge certain claims they have against Defendant under the TCPA and related state laws. The parties' settlement agreement is attached as Exhibit A to the Declaration of James L. Davidson ("Davidson Dec."), which is Exhibit 1 to this motion.

**The TCPA**

The TCPA makes it unlawful for "any person . . . to make any call . . . using . . . an artificial or prerecorded voice . . . to any telephone number assigned to . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii). The "called party" under the TCPA is "the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 643 (7th Cir. 2012). And "'prior express consent' under the TCPA is an affirmative defense on which the defendant bears the burden of proof[.]" *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014).

**Relevant Factual Background**

In early 2024—after receiving his phone number from a third-party for which Defendant provided prescription benefits—Plaintiff alleges that Defendant began placing prerecorded voice calls to Plaintiff's cellular phone number intending to reach someone Plaintiff does not know ("John Doe").[1] Plaintiff alleges that, following receipt of a prerecorded voice call on February 13, 2024, Plaintiff placed a return call to Defendant that same day and informed Defendant that he was not the person that Defendant was trying to reach, and that Defendant should stop calling his phone number.

Defendant allegedly called Plaintiff again the next day, February 14, 2024, to reach Mr. Doe, and caused to be delivered a prerecorded voice message intended for Mr. Doe. Plaintiff alleges that, following receipt of the February 14, 2024 prerecorded voice message, Plaintiff called Defendant back and again advised Defendant that it should stop calling his phone number. But on

---

[1]    Plaintiff refers to the person Defendant was trying to call as "John Doe" to protect that person's identity given the medically related nature of the calls.

February 26, 2024, Defendant allegedly again directed a call to Plaintiff and again caused to be delivered a prerecorded voice message intended for Mr. Doe.

Plaintiff alleges that at no point did he have a relationship with Defendant, and he did not provide his phone number to Defendant. He further alleges that he did not give Defendant consent to deliver prerecorded voice messages to his phone number.

Moreover, Plaintiff contends that he is not alone. During the relevant time period, Defendant caused to be delivered artificial or prerecorded voice messages to approximately 155,224 phone numbers it categorized as "wrong number" or "bad number."

Argument

**I.    This Court should certify the class for settlement purposes.**

Under Rule 23 of the Federal Rules of Civil Procedure, the party seeking class certification must satisfy the four requirements of Rule 23(a)—referred to as numerosity, commonality, typicality, and adequacy of representation—and, in a matter like this one, the requirements of Rule 23(b)(3). Here, Plaintiff satisfies each of these requirements.

**A.    TCPA claims are well suited for class treatment.**

"Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").

And this remains true for "wrong number" TCPA class actions. *See, e.g., Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGJ, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025) (certifying a "wrong number" TCPA class over objection); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-

00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (same); *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018) (same), *decertified per agreement of the parties*, 2020 WL 1846165 (S.D. Fla. Mar. 18, 2020); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (Mckinney, J.) (same); *accord Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021) (denying a motion to decertify a "wrong number" TCPA class); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying "non-debtor" TCPA classes over objection).[2]

### B. Plaintiff satisfies the requirements of Rule 23(a).

#### 1. The settlement class is so numerous that joinder of all members is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the class numbers at least 40, joinder is generally considered impracticable." *Simpson v. Safeguard Props., LLC*, No. 13 CV 2453, 2014 WL 4652336, at *2 (N.D. Ill. Sept. 17, 2014); *see also Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) ("Even if the class were limited to 40 stockholders, as proposed by the court below, that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally

---

[2]    Plaintiff's counsel here—Greenwald Davidson Radbil PLLC ("GDR")—was appointed as counsel for the respective classes in *Head*, *Wesley*, *Knapper*, *Reyes*, and *Johnson*. Additionally, the defendants' petitions to appeal pursuant to Rule 23(f) in *Head*, *Wesley*, and *Johnson* were denied by the Ninth, Tenth, and Seventh Circuits, respectively.

too small to warrant undertaking individual actions.").

Here, Defendant identified approximately 155,224 phone numbers that potentially fall within the settlement class definition.[3] Accordingly, the settlement class is so numerous that joinder is impracticable. *See, e.g.*, *Lavigne*, 2018 WL 2694457, at *3-4 (finding a proposed "wrong number" TCPA class satisfied numerosity where "Defendants' own call logs . . . identify 38,125 separate phone numbers (both landline and cell phone) that . . . were coded as 'Bad/Wrong Number,'" and explaining that "[e]ven if only a fraction of the approximately 38,125 are in fact class members, the numerosity requirement here is readily satisfied."); *Veness v. Heywood, Cari & Anderson, S.C.*, No. 17-338, 2017 WL 6759382, at *2 (W.D. Wis. Dec. 29, 2017) (finding numerosity satisfied with 49 class members); *Hoffmaster v. Coating Place, Inc*, No. 16-cv-258-wmc, 2017 WL 945107, at *2 (W.D. Wis. Mar 10, 2017) (finding numerosity satisfied with 78 class members); *Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 296-97 (S.D. Ind. 2013) (Barker, J.) (finding numerosity satisfied where the class was estimated to be 273 persons).

### 2. Common questions exist as to each member of the settlement class.

Rule 23(a)(2) requires the existence of common questions of law or fact. A common question is one such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015).

"The test for commonality is not demanding." *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998). To satisfy the commonality element, it is enough for a plaintiff to present just one common claim. *Wal-Mart Stores, Inc. v.*

---

[3]    The phone numbers at issue need to be scrubbed to determine which are associated with cellular phone or VOIP lines. The settlement administrator will undertake that task as part of the settlement administration process.

*Dukes*, 131 S. Ct. 2541, 2556 (2011). A class action is appropriate in situations where the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 99 S. Ct. 2545, 2257 (1979). Moreover, as Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs.*, 728 F.3d at 684.

This case presents several common questions. For example, whether Defendant placed the calls at issue by using an artificial or prerecorded voice is a question that is common to all settlement class members. *See Knapper*, 329 F.R.D. at 242 ("Whether Defendant used a[] . . . prerecorded voice to allegedly call the putative class members would produce an answer that is central to the validity of each claim in one stroke."); *Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2014 WL 11894430, at *3 (S.D. Fla. Sept. 29, 2014) (finding that "common questions . . . apt to drive the resolution of the case, includ[e] (1) whether [the defendant] placed the calls at issue; [and] (2) whether it did so using an automated dialing system or prerecorded or artificial voice"). Furthermore, whether each class member suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another common question. *See Lavigne*, 2018 WL 2694457, at *4 (noting as a common question "whether the class suffered the same injury, receipt of call in violation of the TCPA."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) ("Here there is a common injury, resulting from receipt of the allegedly offending calls . . . . The Court likewise determines that there are questions of law or fact common to each class member.").

As a result, Plaintiff satisfies the commonality requirement.

### 3. Plaintiff's claims are typical of the claims of each member of the settlement class.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012).

Here, Plaintiff and members the settlement class were similarly harmed by Defendant's common practice of delivering prerecorded voice messages to persons who were not associated with certain employer health plan members as part of Defendant's clinical adherence and diabetes programs. Plaintiff, therefore, possesses the same interests, and seeks the same relief, as the members of the settlement class. Correspondingly, Plaintiff's claims are typical of the claims of members of the settlement class. *See Birchmeier*, 302 F.R.D. at 252 ("For this reason, and because the named plaintiffs received the same type of call as the other class members, their claims are typical of those of the class."); *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 696 (S.D. Fla. 2015) ("The Court finds that the proposed class representative satisfies the typicality requirements because Plaintiff, like each of the class members, was purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim."); *see also Lucas v. GC Servs. L.P.*, 226 F.R.D. 337, 341 (N.D. Ind. 2005) ("All of the class members' claims arise from the same practice of GC Services which gave rise to Plaintiffs' claims,

that is each time Defendants sent a collection letter similar to that received by Plaintiffs, they allegedly violated the Fair Debt Collection Practices Act. Thus, Plaintiffs' claims are typical of the class because they arise from the same course of conduct and are based on the same general legal theory.").

As well, that the subject calls Defendant placed to Plaintiff and settlement class members were wrong-number calls makes Plaintiff's claims typical. *See Knapper*, 329 F.R.D. at 242-43 ("The Court finds that the typicality requirement is met. Here, Plaintiff is a not a customer of Defendant and alleges that Defendant did not have consent to call her before it dialed her phone number. . . . She alleges that the putative class members were also wrongly contacted by Defendant. . . . Thus, the nature of Plaintiff's claim is reasonably coextensive with the putative class members.").

### 4. Plaintiff, and his counsel, have, and will, fairly and adequately protect the interests of each member of the settlement class.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that he can act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class. *See Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04 C 7625, 2005 WL 2171168, at *4 (N.D. Ill. Aug. 30, 2005) ("Three elements must be satisfied: (1) the class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the class representative must have a sufficient interest in the outcome to ensure vigorous advocacy; (3) counsel for the class representative must be competent, experienced, qualified and generally able to conduct the proposed litigation vigorously.").

Here, Plaintiff has diligently pursued this case since its inception with the goal of obtaining relief for members of the settlement class. *See Selburg v. Virtuoso Sourcing Grp., LLC*, No. 1:11–

cv–1458–RLY–MJD, 2012 WL 4514152 at *9 (S.D. Ind. Sept. 29, 2012) (Young, J.) ("Here, the court finds Plaintiff to be an adequate representative without any conflicts or antagonistic claims of the proposed class members. All members of the class received the allegedly deficient letter issued by Virtuoso and are challenging its validity under the FDCPA. The Plaintiff has a sufficient stake in the outcome and will be a zealous advocate of the class. In addition, counsel for named Plaintiff is experienced in class actions and other complex litigation and thus satisfies that requirement. Accordingly, the adequacy of representation requirement under Rule 23(a)(4) has been met."). Moreover, he has no interests that conflict with or are antagonistic to the other members of the settlement class. *See* Excerpt of Deposition of Brad Patterson, attached as Exhibit B to the Davidson Decl., at 91:8-94:1.

In addition, Plaintiff retained the services of counsel who are well-versed in class action litigation. Courts across the country have appointed GDR as class counsel in numerous consumer protection class actions in the past several years, including those brought under the TCPA. *See* Davidson Dec., at ¶ 7. Thus, in addition to satisfying the adequacy prong of Rule 23(a)(4), GDR, and its co-counsel Paronich Law, P.C. ("Paronich Law"), also satisfy the considerations of Rule 23(g). Accordingly, this Court should appoint GDR and Paronich Law to represent the class. *See, e.g., Jewell v. HSN, Inc.*, No., 19-cv-247-jdp, 2020 WL 4904427, at *2 (W.D. Wis. Aug. 19, 2020) (appointing GDR as class counsel); *Veness*, 2017 WL 6759382, at *2 (same); *Johnson*, 315 at 503 (same).

### C.  Plaintiff satisfies the requirements of Rule 23(b)(3).

#### 1.  Questions common to each member of the settlement class predominate over any questions affecting only individual members.

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623

(1997). Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

To state a claim under the TCPA, a plaintiff must allege that he was called with an artificial or prerecorded voice, without consent, on his cellular phone number. *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016). Given as much, "the predominant issue common to all class members is whether Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls . . . in violation of the TCPA[,] [and] any individualized factual questions are predominated by the common question of Defendant's general TCPA liability." *Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *5 (E.D. Cal. July 6, 2020); *see also Gehrich*, 316 F.R.D. at 226 (noting that "[t]he common questions [including whether the defendant placed prerecorded or automated calls to cellular telephone numbers] are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues").

Also significant, individualized issues of prior express consent that may exist in some TCPA class actions do not exist here. In short, members of the settlement class are unintended recipients of Defendant's prerecorded voice messages, who necessarily did not provide Defendant consent to place calls to their phone numbers. As such, issues relating to prior express consent do not bear on this matter. *See Head*, 340 F.R.D. at 153 (agreeing "that issues of consent do not defeat the class because class members, by definition, are non-customers of Citibank who did not consent

to being robocalled"). And even if issues regarding prior express consent existed here—they do not—common issues would still predominate. *See Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 ("The Court agrees . . . that any issues relating to whether any of the recipients gave permission to receive faxes prior to transmission or whether any of the plaintiffs had an established business relationship with the defendant can be handled within the framework of a class action.").

Moreover, in a wrong-number TCPA class action, issues related to "wrong number" notations do not defeat predominance even were they to exist:

> Defendants also argue that this litigation will devolve into individualized issues . . . . They assert that a call could be coded "Bad/Wrong Number" for many reasons unrelated to the fact that a third party was called. Initially, a number of courts have rejected this theory in "Wrong Number" cases, under similar factual circumstances, at the class certification stage. *See Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016); *Munday*, 2016 WL 7655807, at *4; *Abdeljalil*, 306 F.R.D. at 309 (rejecting argument that class is not ascertainable because notation in account for "bad number" does not necessarily mean that number belonged to non-account holder); *West v. California Servs. Bureau, Inc.*, 2017 WL 6316823, at *4 (N.D. Cal. 2017) ("Defendant does not persuade. As an initial matter, several district courts have deemed commonality and predominance satisfied in TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as 'wrong number' in defendant's call log databases 'may not have actually been a wrong number.").

*Lavigne*, 2018 WL 2694457, at *8.

And this is especially true where a class—as here—is not defined by reference to Defendant's internal "wrong number" designations. *See Wesley*, 339 F.R.D. at 298 (noting if a class were defined "by reference to the 'Wrong Number' notations  . . . the inaccuracy of the [the notations] would raise an individualized issue of consent with the class members," but where a class is not defined "by reference to 'wrong number' calls" any inaccuracy in "wrong number" notations does not raise individualized issues that will predominate).

Additionally, other potential issues—such as "difficult damage calculations, individual determinations of who the telephone user was, when the call was made and proof that [the

defendant] actually made the calls . . . difficult[y] [in] determining the identity of users . . . [and] the distinct possibility that every record marked as a wrong number may not have actually been a wrong number"—do not stand in the way of a finding of predominance. *See Johnson*, 315 F.R.D. at 502 (certifying a "wrong-number" TCPA class, and rejecting the defendant's contention that individual issues would "overwhelm the litigation and destroy the required commonality of facts"). As such, predominance is satisfied.

### 2. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class action is superior, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id*.

In general, litigating TCPA claims as part of a class action is superior to litigating them in successive individual lawsuits. *See Knapper*, 329 F.R.D. at 247 (noting in certifying a TCPA class: "The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. . . . Therefore, the Court finds that a class action is a superior method to adjudicate this matter."); *Green v. Serv. Master On Location Servs. Corp.*, No. 07 C

4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) ("[R]esolution of the issues [under the TCPA] on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources.").

As well, here, no one settlement class member has an interest in controlling the prosecution of this action. Simply, the claims of all members of the settlement class are identical, they arise from the same standardized conduct, and they result in uniform damages calculated on a per-violation basis. *See James v. JPMorgan Chase Bank, N.A.*, No. 15–2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ("This class action, which resolves the controversy more fairly and efficiently than a series of individual actions, satisfies Rule 23(b)(3)'s superiority requirement. Because the TCPA permits a maximum award of $500 absent a willful violation, each class member lacks a strong financial interest in controlling the prosecution of his action."); *Lavigne*, 2018 WL 2694457, at *8 ("Here, Plaintiff has met the superiority requirement. It is unlikely that putative class members will file a case under TCPA for $500-1500, and will have little interesting in controlling the prosecution of the TCPA claims. Moreover, the complex nature of this TCPA action lends itself to the efficiencies of class certification. It would inefficient to reinvent wheel on approximately 30,000 separate cases. Moreover, the courts would be substantially burdened by 30,000 separate suits—or even a fraction of that.").

Furthermore, absent a class action, hundreds of claims like Plaintiff's—all of which stem from Defendant's identical conduct in allegedly calling class members' cellular phones without consent—will likely go un-redressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are

therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute.").

A class action is therefore the superior method to adjudicate all aspects of this controversy.

## II. This Court should preliminarily approve the settlement as fair, reasonable, and adequate under Rule 23(e).

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd. of Sch. Dirs. of Milwaukee,* 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). While settlements are favored, Rule 23(e) still requires that the Court make a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002). After the preliminary fairness evaluation has concluded, the class has been certified for settlement purposes, and notice has been issued, the court holds a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; 4 NEWBERG, *supra* at § 11.25.

Preliminary approval requires only that the Court evaluate whether the proposed settlement "is within the range of possible approval." *Armstrong,* 616 F.2d at 314. Nevertheless, and with the understanding that a full fairness determination is not necessary at this preliminary approval stage, the Seventh Circuit identified a number of factors used to assess whether a settlement proposal is fundamentally fair, reasonable, and adequate: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006).

As well, Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable.

### A.  The strengths of Plaintiff's case and the risks inherent in continued litigation and securing class certification favor preliminary approval.

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985), *on reh'g sub nom. Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682 (7th Cir. 1986). Here, significant risks and costs accompany continued litigation.

First, absent settlement, significant motion practice lay ahead, including briefing on Plaintiff's motion for class certification, and likely competing motions for summary judgment. Given the considerable work already performed in this matter—and the work left to perform, including any appeals—settlement here is warranted. *See*, *e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D.

343, 349-50 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"); *accord Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant.").

As a result, the complex issues encompassed by this action, together with the length of time and expense likely necessary to resolve this case by continued litigation, weigh in favor of preliminary approval. *See Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ("Overall, the significant complexity of the issues this case presents, the increased length of time that would be necessary to resolve this case by continued litigation, and the corresponding dramatic increase in costs weigh in favor of approving the proposed settlement.").

### B. The stage of the proceedings and experience and views of counsel favor preliminary approval.

During the pendency of this litigation, the parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the proposed settlement to further litigation. The parties engaged in written discovery and depositions, exchanged document productions, and Plaintiff served an expert report. The parties then engaged in a full day mediation with an experienced mediator which led to the agreement here. And both Plaintiff and his counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class. *See Swift v. Direct Buy, Inc.*, Nos. 2:11–CV–401–TLS, 2:11–CV–415–TLS, 2:11–CV–417–TLS, 2:12–CV–45–TLS, 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013) ("Third, as the Court has already noted, the 'opinion of competent counsel' supports a determination that the settlement is fair, reasonable, and adequate under Rule 23.").

**C. The non-reversionary cash relief afforded by the settlement is significant and favors preliminary approval.**

In evaluating the fairness of the consideration offered in settlement, it is not the role of the court to second-guess the negotiated resolution of the parties. As the Ninth Circuit wrote:

> The court's intrusion upon what is otherwise a private, consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). And as the Northern District of Indiana explained in approving a class action settlement in *Swift*:

> Although $20 (the expected pro rata award of the net settlement fund for each class member who filed a claim notice) is not significant in a vacuum, "a dollar today is worth a great deal more than a dollar ten years from now," *Reynolds*, 288 F.3d at 284, and a major benefit of the settlement is that class members will obtain these benefits much more quickly than had the parties not settled. The parties have informed the Court that this case, were it to proceed, would face numerous challenges such that, even if the case reached trial, the class members would not receive benefits for many years, if they received any at all. Faced with the prospect of receiving no recovery—both because DirectBuy might have succeeded in any aspect of what would have been a vigorous defense absent settlement and because DirectBuy had no unencumbered assets—Class Counsel is confident that payment of up to $20.00 per household is an excellent result in this litigation.

2013 WL 5770633, at *5.

Here, Defendant will pay $1,860,000 into a non-reversionary common fund to resolve this matter, or about $11.98 per potential settlement class member. This amount compares favorably with similar settlements under the TCPA, all of which various district courts approved. *See, e.g.*, *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—a small fraction of the expected recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *see also Jackson v. Discover Fin. Servs., Inc.*, No. 1:21-cv-04529 (N.D. Ill. 2023) (approximately $10.75 per potential member); *Williams*

*v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (approximately $7 per potential class member); *Ward v. Flagship Credit Acceptance LLC*, No. 17-cv-02069 (E.D. Pa. 2018) (approximately $22.35 per potential class member). *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55 per potential class member); *Wilkins v. HSBC Bank Nev.*, N.A., No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($2.95 per potential class member); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63 per potential class member); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15 per potential class member).

The settlement provides settlement class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See*, *e.g.*, *Palm Beach Golf Center-Boca, Inc.*, 311 F.R.D. at 699 (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the settlement, settlement class members will receive money they otherwise would have likely never pursued on their own.

In the end, the settlement constitutes an objectively favorable result for settlement class members and outweighs the mere possibility of future relief after protracted and expensive litigation.

**D. The settlement treats class members equitably.**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each participating class member will be treated equitably as each participating class member will receive an equal portion of the $1,860,000 common fund after deducting attorneys' fees, costs, expenses, an incentive award to Plaintiff, and the costs of class notice and administration. Moreover, the release affects each participating class member in the same way as each participating class member will release the same claims. As such, this factor supports preliminary approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

**III.    This Court should approve the parties' notice plan.**

Pursuant to Rule 23(e), a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties agreed to a robust notice program to be administered by a well-respected third-party class administrator. Through the notice program, the Administrator will use all reasonable efforts to provide direct mail notice to class members.

The plan complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of this action; (2) the essential terms of the parties' settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion, and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for an incentive award and his request for an award of attorneys' fees and expenses for his counsel; and (6) how to make inquiries and where to find additional information regarding the settlement and claims at hand. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312. The Administrator will also establish a dedicated settlement website through which class members can review relevant documents filed with this Court.

The ultimate goal of the notice program is to make it as convenient as possible for settlement class members to learn of, and participate in, the settlement. And this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A).

**IV.    This Court should set a final fairness hearing.**

The final step in the settlement approval process is a final fairness hearing, during which a court hears all evidence and argument necessary to finally evaluate the fairness of a settlement. Fed. R. Civ. P. 23(e)(2). After the final fairness hearing, the court then determines whether the

settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Here, the parties respectfully request that this Court set a date for a final fairness hearing, at this Court's convenience, approximately five months after it preliminarily approves the parties' settlement.

## Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement, certifying the class for settlement purposes, appointing Plaintiff as the representative of the settlement class, appointing Plaintiff's counsel as counsel for the settlement class, and directing class notice as described above. Defendant is not opposed to preliminary approval of the settlement.

Date: October 8, 2025

*/s/ James L. Davidson*
James L. Davidson
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed settlement class*