## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRAD PATTERSON, on behalf of himself and others similarly situated,<br><br>                          Plaintiff,<br>   v.<br><br>OPTUMRX, INC.,<br><br>                      Defendant. | Civil Case No.: 1:24-cv-689-TWP-KMB |

### DECLARATION OF JAMES L. DAVIDSON IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, James L. Davidson, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      My name is James L. Davidson.

2.      I am over twenty-one years of age and am fully competent to make the statements contained in this declaration.

3.      I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

4.      I am admitted to practice before this Court *pro hac vice*.

5.      I am a partner at the law firm of Greenwald Davidson Radbil PLLC ("GDR"), co-counsel for Brad Patterson ("Plaintiff") in the above-entitled action, and proposed co-class counsel.

### GDR's Experience

6.      GDR's attorneys have extensive experience litigating consumer protection class actions, including class actions under the Telephone Consumer Protection Act ("TCPA").

7.      As court-appointed class counsel in TCPA class actions, GDR has helped to recover nearly $200 million over the past eight years, including in the following cases:

1

- *Arthur v. Oregon Community Credit Union*, No. 6:24-cv-01700-MC (D. Or.);

- *Johnson v. United HealthCare Servs., Inc.*, No. 5:23-cv-00522-GAP-PRL (M.D. Fla.);

- *Daugherty v. Credit Bureau Servs. Ass'n*, No. 4:23-cv-01728 (S.D. Tex);

- *Cornelius v. Deere Credit Servs., Inc.,* No. 4:24-cv-25-RSB-CLR (S.D. Ga.);

- *Smith v. Assurance IQ, LLC*, No. 2023-CH-092252 (Cook County, Ill.);

- *Fralish v. Ceteris Portfolio Servs., LLC*, No. 3:22-CV-176-DRL-MGG (N.D. Ind.);

- *Jackson v. Discover Fin. Servs. Inc.*, No. 1:21-cv-04529 (N.D. Ill.);

- *Lucas v. Synchrony Bank*, No. 4:21-cv-00070-PPS (N.D. Ind.);

- *Wesley v. Snap Fin. LLC*, No. 2:20-cv-00148-RJS-JCB (D. Utah);

- *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR (E.D. Mo.);

- *Davis v. Mindshare Ventures LLC et al.*, No. 4:19-cv-1961 (S.D. Tex.);

- *Bonoan v. Adobe, Inc.*, No. 3:19-cv-01068-RS (N.D. Cal.);

- *Head v. Citibank, No*. CV-18-08189-PCT-ROS (D. Ariz.);

- *Neal v. Wal-Mart Stores, Inc. and Synchrony Bank*, No. 3:17-cv-00022 (W.D.N.C.);

- *Jewell v. HSN, Inc.*, No. 3:19-cv-00247-jdp (W.D. Wis.);

- *Knapper v. Cox Commc'ns, Inc.*, No. 2:17-cv-00913-SPL (D. Ariz.) (Logan, J.);

- *Sheean v. Convergent Outsourcing, Inc.*, No. 2:18-cv-11532-GCS-RSW (E.D. Mich.);

- *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-01971-T-27AAS (M.D. Fla.);

- *Martinez, et al., v. Medicredit, Inc.*, No. 4:16-cv-01138 ERW (E.D. Mo.);

- *Johnson v. NPAS Solutions, LLC*, No. 9:17-cv-80393 (S.D. Fla.) (on appeal);

- *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 1:15-cv-01058-TWT (N.D. Ga.);

- *Prather v. Wells Fargo Bank, N.A.*, No. 1:15-cv-04231-SCJ (N.D. Ga.);

- *Johnson v. Navient Solutions, Inc., f/k/a Sallie Mae, Inc.*, No. 1:15-cv-0716-LJM (S.D. Ind.);

- *Toure and Heard v. Navient Solutions, Inc., f/k/a Sallie Mae, Inc.*, No. 1:17-cv-00071-LJM-TAB (S.D. Ind.);

- *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS (M.D. Fla.);

- *Schwyhart v. AmSher Collection Servs., Inc.*, No. 2:15-cv-1175-JEO (N.D. Ala.);

- *Cross v. Wells Fargo Bank, N.A.*, No. 2:15-cv-01270-RWS (N.D. Ga.);

- *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156 (N.D. Ga.);

- *Prater v. Medicredit, Inc.*, No. 14-00159 (E.D. Mo.);

- *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-00130-PJK-GBW (D.N.M.); and

- *Ritchie v. Van Ru Credit Corp.*, No. 2:12-CV-01714-PHX-SM (D. Ariz.).

8.     In addition, GDR has been appointed class counsel in dozens of class actions brought under consumer protection statutes other than the TCPA, including:

- *Taylor v. TimePayment Corp.*, No. 3:18-cv-00378-MHL-DJN (E.D. Va.);

- *Danger v. Nextep Funding, LLC*, No. 0:18-cv-00567-SRN-LIB (D. Minn.);

- *Spencer v. #1 A LifeSafer of Ariz. LLC*, No. 18-02225-PHX-BSB (D. Ariz.) (Bade, J.);

- *Dickens v. GC Servs. Ltd. P'Ship*, No. 8:16-cv-00803-JSM-TGW (M.D. Fla.);

- *Kagno v. Bush Ross, P.A.*, No. 8:17-cv-1468-T-26AEP (M.D. Fla.);

- *Johnston v. Kass Shuler, P.A.*, No. 8:16-cv-03390-SDM-AEP (M.D. Fla.);

- *Jallo v. Resurgent Capital Servs., L.P.*, No. 4:14-cv-00449 (E.D. Tex.);

- *Macy v. GC Servs. Ltd. P'ship*, No. 3:15-cv-00819-DJH-CHL (W.D. Ky.);

- *Rhodes v. Nat'l Collection Sys., Inc.*, No. 15-cv-02049-REB-KMT (D. Colo.);

- *McCurdy v. Prof'l Credit Servs.*, No. 6:15-cv-01498-AA (D. Or.);

- *Globus v. Pioneer Credit Recovery, Inc.*, No. 15-CV-152V (W.D.N.Y.);

- *Roundtree v. Bush Ross, P.A.*, No. 8:14-cv-00357-JDW-AEP (M.D. Fla.); and

- *Gonzalez v. Germaine Law Office PLC*, No. 2:15-cv-01427-PHX-ROS (D. Ariz.).

9. Multiple district courts have commented on GDR's useful knowledge and experience in connection with class action litigation.

10. In *Head*, Judge Rosyln O. Silver of the District of Arizona wrote:

> Moreover, the quality of Plaintiff's filings to this point, as well as the declarations submitted by the proposed class counsel, Michael Greenwald (Doc. 120-6) . . . persuade the Court that Head, Greenwald, and Wilson will continue to vigorously prosecute this action on behalf of the class.
>
> *       *       *
>
> Significantly, class counsel have provided a list of well over a dozen class actions Greenwald, Wilson, and their respective firms have each litigated, including several under the TCPA. (Doc. 120-6 at 5-6; Doc. 120-7 at 2-7). These showings demonstrate counsel's experience in handling class actions, complex litigation, and the types of claims asserted in this action. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii).

*Head v. Citibank, N.A.*, 340 F.R.D. 145, 152 (D. Ariz. 2022).

11. As well, in *Ritchie*, Judge Stephen P. McNamee of District of Arizona stated upon granting final approval to the TCPA settlement at issue:

> I want to thank all of you. It's been a pleasure. I hope that you will come back and see us at some time in the future. And if you don't, I have a lot of cases I would like to assign you, because you've been immensely helpful both to your clients and to the Court. And that's important. So I want to thank you all very much.

No. CIV-12-1714 (D. Ariz. July 21, 2014).

12. In preliminarily approving the class action settlement in *Chapman v. Bowman, Heintz, Boscia & Vician, P.C*, Judge Jon E. DeGuilio of the Northern District of Indiana wrote:

> No doubt Michael L. Greenwald of Greenwald Davidson Radbil PLLC has put extensive work into reviewing and investigating the potential claims in this case, and he and his firm have experience in handling class action litigation. Additionally, Mr. Greenwald has demonstrated his knowledge of the FDCPA and he has so far committed the resources necessary to representing the class and administrating the proposed settlement. The Court believes that Mr. Greenwald will fairly and adequately represent the interests

4

> of the class; and therefore, in compliance with Rule 23(g)(1), it is
> **ORDERED** that Michael Greenwald of Greenwald Davidson Radbil PLLC
> is appointed Class Counsel.

No. 2:15-cv-120 JD, 2015 WL 9478548, at *6 (N.D. Ind. Dec. 29, 2016).

13.    In *Schwyhart*, Judge John E. Ott, Chief Magistrate Judge of the Northern District of

Alabama, stated upon granting final approval to a TCPA settlement for which he appointed GDR

as class counsel:

> I cannot reiterate enough how impressed I am with both your handling of the
> case, both in the Court's presence as well as on the phone conferences, as
> well as in the written materials submitted. . . . I am very satisfied and I am
> very pleased with what I have seen in this case. As a judge, I don't get to say
> that every time, so that is quite a compliment to you all, and thank you for
> that.

No. 2:15-cv-1175-JEO (N.D. Ala. Mar. 15, 2017).

14.    Judge Carlton W. Reeves of the Southern District of Mississippi described GDR as

follows:

> More important, frankly, is the skill with which plaintiff's counsel litigated
> this matter. On that point there is no disagreement. Defense counsel concedes
> that her opponent—a specialist in the field who has been class counsel in
> dozens of these matters across the country—"is to be commended for his
> work" for the class, "was professional at all times" ..., and used his "excellent
> negotiation skills" to achieve a settlement fund greater than that required by
> the law.
>
> The undersigned concurs ... Counsel's level of experience in handling cases
> brought under the FDCPA, other consumer protection statutes, and class
> actions generally cannot be overstated.

*McWilliams v. Advanced Recovery Sys., Inc.*, No. 3:15-CV-70-CWR-LRA, 2017 WL 2625118, at

*3 (S.D. Miss. June 16, 2017).

15.    As well, Judge Steven D. Merryday of the Middle District of Florida wrote in

appointing GDR class counsel in *James* that "Michael L. Greenwald, James L. Davidson, and Aaron

D. Radbil of Greenwald Davidson Radbil PLLC, each . . . has significant experience litigating

TCPA class actions." 2016 WL 6908118, at *1.

16.     In *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, Judge C. Darnell Jones II of the Eastern District of Pennsylvania took care to point out that GDR was appointed as class counsel "precisely because of their expertise and ability to represent the class in this matter." 2016 WL 4766079, at *5 (E.D. Pa. Sept. 13, 2016).

17.     Similarly, in *Cooper v. InvestiNet, LLC*, Chief Judge Tanya Walton Pratt of the Southern District of Indiana wrote:

> GDR is an experienced firm that has successfully litigated many complex consumer class actions, including under the FDCPA. Because of its experience, GDR has been appointed class counsel in many class actions throughout the country, including in this district. GDR employed that experience here in negotiating a favorable result that avoids protracted litigation, trial, and appeals.

No. 1:21-cv-01562-TWP-DML, 2022 WL 1125394 (S.D. Ind. April 14, 2022).

18.     Additional information about GDR is available at www.gdrlawfirm.com.

### James L. Davidson

19.     I graduated from the University of Florida in 2000 and the University of Florida Fredric G. Levin College of Law in 2003.

20.     I have been appointed class counsel in a host of consumer protection class actions.

21.     I have also briefed and argued a number of significant consumer protection legal issues on appeal.

22.     Prior to forming GDR, I spent five years as a litigator at Robbins Geller, where I focused on complex class actions, including securities and consumer protection litigation.

### Michael L. Greenwald

23.     Prior to forming GDR in 2012, Mr. Greenwald spent six years as a litigator at Robbins Geller Rudman & Dowd LLP—one of the nation's largest plaintiff's class action firms.

24.     His practice at Robbins Geller focused on complex class actions, including securities and consumer protection litigation.

25.     While at Robbins Geller, he served on the litigation teams responsible for the successful prosecution of numerous class actions, including: *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.* (D. Mass.); *In re Red Hat, Inc. Sec. Litig.* (E.D.N.C.); *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co., et al.* (D.S.C.); *Norfolk Cnty. Ret. Sys., et. al. v. Ustian* (N.D. Ill.); *Romero v. U.S. Unwired, Inc.* (E.D. La.); *Lefkoe v. Jos. A. Bank Clothiers, Inc.* (D. Md.); and *In re Odimo, Inc. Sec. Litig.* (Fla.).

26.     Mr. Greenwald started his career as an attorney in the Fort Lauderdale, Florida office of Holland & Knight LLP.

**Aaron D. Radbil**

27.     Mr. Radbil graduated from the University of Arizona in 2002 and from the University of Miami School of Law in 2006.

28.     Mr. Radbil has extensive experience litigating consumer protection class actions, including those under the TCPA.

29.     In addition to his experience litigating consumer protection class actions, Mr. Radbil has briefed, argued, and prevailed on a variety of issues of significant consumer interest before federal courts of appeals.

**Jesse S. Johnson**

30.     Mr. Johnson earned his Bachelor of Science degree in Business Administration from the University of Florida, where he graduated magna cum laude in 2005.

31.     He earned his Juris Doctor degree with honors from the University of Florida Fredric G. Levin College of Law in 2009, along with his Master of Arts in Business Administration from

7

the University of Florida Hough Graduate School of Business the same year.

32.    While an attorney at GDR, Mr. Johnson has been appointed class counsel in more than a dozen consumer protection class actions.

33.    Mr. Johnson started his legal career as an associate at Robbins Geller, where he served on the litigation teams responsible for the successful prosecution of numerous class actions, including: *Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 1:11-cv-08332 (N.D. Ill.); *Eshe Fund v. Fifth Third Bancorp*, No. 1:08-cv-00421 (S.D. Ohio); *City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.*, No. 3:10-cv-01073 (M.D. Fla.); and *In re Synovus Fin. Corp.*, No. 1:09-cv-01811 (N.D. Ga.).

**GDR's Willingness and Ability to Protect Settlement Class Members**

34.    GDR has, and will continue to, vigorously protect the interests of members of the proposed settlement class.

35.    GDR, along with co-counsel, has advanced all costs necessary to prosecute this action.

36.    GDR has devoted significant time to this case and will continue to devote all necessary time to this case as it proceeds through the settlement approval process.

37.    GDR has no known conflicts with the proposed settlement class.

**The Settlement**

38.    The settlement requires OptumRx, Inc. ("Defendant") to create a non-reversionary common fund of $1.86 million

39.    The Settlement Class is defined as:

>    All persons throughout the United States (1) to whom OptumRx, Inc. placed, or caused to be placed, a clinical adherence call, other than calls regarding prescription refill

reminders or calls regarding COVID-19 vaccines, (2) directed to a number assigned to a cellular telephone or VOIP service, but not assigned to an OptumRx, Inc. customer or account holder, (3) in connection with which OptumRx, Inc. used, or caused to be used, an artificial or prerecorded voice, (4) from April 20, 2020 through the date of preliminary approval of the settlement.

40.     Participating settlement class members will receive an equal share of the common fund after deducting attorneys' fees, costs, and expenses as awarded by the Court, notice and administration costs, and an incentive award to Plaintiff, subject to Court approval.

41.     There is no clear-sailing provision with respect to attorneys' fees, costs, or expenses. As a result, Defendant may object to these amounts if it chooses to do so.

42.     The settlement fund is all cash, with no coupon or voucher component.

43.     No settlement funds will revert to Defendant

44.     The parties reached this settlement after months of litigation that included written discovery and depositions.

45.     Moreover, the parties reached this settlement as a result of mediation with the Hon. Diane M. Welsh (Ret.). *See* https://www.jamsadr.com/welsh/ (last accessed Oct. 1, 2025).

46.     Given the meaningful recovery for the class, particularly in light of the risks associated with continued litigation, I firmly believe the settlement to be fair, reasonable, and adequate, and that this Court should preliminarily approve it and order the issuance of class notice.

47.     Attached as Exhibit A is a true and correct copy of the settlement agreement and its exhibits.

48.     Attached as Exhibit B is a true and correct copy of an excerpt of the deposition of Brad Patterson.

49.        I declare under penalty of perjury that the foregoing is true and correct.


                                    _/s/ James L. Davidson_
                                    James L. Davidson

                                    Dated: October 8, 2025

**Exhibit A**

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

## CLASS ACTION SETTLEMENT AGREEMENT

Brad Patterson ("Plaintiff") and OptumRx, Inc. ("Defendant") enter into this arm's-length class action settlement agreement ("Agreement").

**1. Recitals:**

1.1.   On April 22, 2024, Plaintiff filed a class action complaint against Defendant, styled *Patterson v. OptumRx, Inc.*, No. 24-cv-689-TWP-KMB (S.D. Ind.), through which Plaintiff alleges violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

1.2.   On June 10, 2024, Defendant answered the Complaint.

1.3.   The parties reach this Settlement (defined below) after more than a year of contentious litigation, which included significant fact discovery, expert analysis, and depositions of Plaintiff and Defendant's corporate representative.

1.4    On September 3, 2025, the Parties participated in a mediation with the Honorable Diane M. Welsh (Ret.) of JAMS, Inc.

1.6.   Plaintiff and Defendant now intend to settle and finally resolve all claims Plaintiff asserts through the Lawsuit.

1.7    Defendant denies any wrongdoing or liability related to the allegations included in the Lawsuit and denies any improper conduct or violation of the TCPA.

1.8.   Aware of the substantial expense, delay, and inherent risk associated with litigation, Plaintiff and his counsel recognize that in light of the recovery that results from the Settlement, continued litigation is not in the best interest of members of the settlement class that is the subject of this Agreement.

1.9.   Also aware of the substantial expense, delay, and inherent risk associated with litigation, Defendant believes it is in its best interest to enter into the Settlement to finally resolve all claims asserted in the Litigation.

1.10.  Plaintiff and his counsel believe that the Settlement is fair, adequate, and reasonable.

1.11.  Plaintiff and Defendant agree to undertake all steps necessary to secure court approval of the Settlement.

1.11.  The Settlement is not to be construed as an admission or concession by Plaintiff that there is any infirmity in the claims he asserts through the Lawsuit.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

1.12.    The Settlement is not to be construed as an admission or concession by Defendant regarding liability or wrongdoing, and Defendant denies any liability, denies that it violated the TCPA, and denies any other wrongdoing.

## 2.  **Definitions:**

2.1.    "Approved Claim Form" means a Claim Form that a Settlement Class Member (defined below) timely submits, and that the Claims Administrator (defined below) approves for payment.

2.2.    "Claims Administrator," subject to the Court's (defined below) approval, means Kroll Settlement Administration LLC.

2.3.    "Claim Form" means the detachable form that Settlement Class Members must submit to obtain a monetary recovery in connection with the Settlement.

2.4.    "Class Counsel" means Greenwald Davidson Radbil PLLC and Paronich Law, P.C.

2.5.    "Class Notice" means the notice that the Court approves in a form substantially similar to Exhibit 1 to this Agreement, which includes a postcard notice with the Claim Form, and a question-and-answer notice to appear on the dedicated settlement website.

2.6.    "Court" means the United States District Court for the Southern District of Indiana.

2.7.    "Fairness Hearing" means the hearing that the Court conducts under Federal Rule of Civil Procedure 23 to consider the fairness, adequacy, and reasonableness of the Settlement.

2.8.    "Finality Date" means the date after which the Court enters a final order and judgment and the time to appeal the final order and judgment expires without appeal, or any appeal is dismissed, or the final order and judgment is affirmed and not subject to review by any court.

2.9.    "Final Order and Judgment" means the final order and judgment that the Court enters in a form substantially similar to Exhibit 3 to this Agreement.

2.10.    "Order Preliminarily Approving the Settlement" means the order, in a form substantially similar to Exhibit 2 to this Agreement, preliminarily approving the Settlement and authorizing the dissemination of class notice.

2.11.    "Preliminary Approval Date" means the date the Court enters the Order Preliminarily Approving the Settlement.

2.12.    "Released Party(ies)" means Defendant and any of its past, present and future direct or indirect parents, subsidiaries, divisions, sister companies, affiliates, related entities, holding companies, unincorporated business units, vendors, independent contractors,

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

stockholders, officers, directors, insurers, general or limited partners, principals, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing).

2.13.   "Released Claims" means all claims to be released as set forth in Section 14 of this Agreement.

2.14.   "Releasors" means Plaintiff and every Settlement Class Member, on behalf of themselves and their respective spouses, heirs, executors, trustees, administrators, successors, predecessors in interest, assigns, insurers, and reinsurers in their capacity as such, and any other person or entity claiming through any of them, as set forth in Section 14 of this Agreement who does not timely and validly exclude himself or himself from the Settlement Class.

2.15.   "Settlement" means the settlement memorialized by this Agreement.

2.16.   "Settlement Class" means the class that the Court certifies for settlement purposes, the definition of which the parties propose as:

> All persons throughout the United States (1) to whom OptumRx, Inc. placed, or caused to be placed, a clinical adherence call, other than calls regarding prescription refill reminders or calls regarding COVID-19 vaccines (2) directed to a number assigned to a cellular telephone or VOIP service, but not assigned to an OptumRx, Inc. customer or account holder, (3) in connection with which OptumRx, Inc. used, or caused to be used, an artificial or prerecorded voice, (4) from April 20, 2020 through the date of preliminary approval of the settlement.

2.17.   "Settlement Class Members" mean all members of the Settlement Class.

**3.   Jurisdiction:**

3.1.   The parties agree that the Court has, and will continue to have, jurisdiction to issue any order necessary to effectuate, consummate, and enforce the terms of the Settlement, to approve attorneys' fees, costs, and expenses, and to supervise the administration and distribution of proceeds associated with the Settlement.

**4.   Certification:**

4.1.   Plaintiff and Defendant agree to certification of the Settlement Class for settlement purposes only.

4.2.   Plaintiff and Defendant estimate that approximately 155,244 unique telephone numbers potentially fall within the Settlement Class definition.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

4.3    To the extent OptumRx identifies additional unique cellular telephone numbers exceeding 10% of the 155,224 telephone numbers estimated to fall within the Settlement Class definition (i.e., more than 170,746 unique numbers), OptumRx shall pay an additional $11.98[1] for each such unique telephone number above 170,746. If the number of unique telephone numbers that potentially fall within the Settlement Class definition as of the Preliminary Approval Date exceeds 200,000, the parties will negotiate in good faith to reach an agreement that allows the Settlement to proceed. However, if good faith negotiations fail, then either Plaintiff or OptumRx may thereafter choose to withdraw from this Agreement, in which case the Agreement will be null and void, and the parties will be returned to the *status quo ante* as if no settlement had been negotiated or entered into.

4.4    Defendant will deliver to Class Counsel, within twenty days after the Preliminary Approval Date, a list in Excel format of the unique cellular telephone numbers that Defendant marked as a "wrong number" or "bad number," and to which Defendant placed, or caused to be placed, a clinical adherence call or calls, other than calls regarding prescription refill reminders or calls regarding COVID-19 vaccines, in connection with which it used, or caused to be used, an artificial or prerecorded voice, from April 20, 2020 through the Preliminary Approval Date.

4.5    Defendant disputes that common issues predominate over individual ones, and denies that a litigation class properly could be certified on the claims asserted in the Lawsuit. However, solely for purposes of avoiding the expense and inconvenience of further litigation, Defendant does not oppose and hereby agrees to certification of the Settlement Class defined in Paragraph 2.16, for settlement purposes only, pursuant to Fed. R. Civ. P. 23(b)(3). Certification of the Settlement Class for settlement purposes will not be deemed a concession that certification of any litigation class in the Lawsuit is, or was, appropriate, nor would Defendant be precluded from challenging class certification in further proceedings in the Lawsuit or in any other action if the Agreement is not finalized or finally approved. If the Agreement is not finally approved by the Court through its final, substantive order on Plaintiff's motion to finally approve the Settlement, and after the Fairness Hearing in this matter, for any reason, the certification of the Settlement Class resulting from this Agreement will be voidable in line with Section 24 of this Agreement, and no doctrine of waiver, estoppel or preclusion will be asserted in any proceedings involving Defendant. Furthermore, this Agreement may only be used by Plaintiff, any person in the Settlement Class, or any other person to establish any of the elements of class certification for purposes of settlement in this Lawsuit, and may not be used to establish the same in any other litigated certification proceedings or any other judicial proceeding outside of this Lawsuit or within this Lawsuit for any purpose other than settlement.

---

[1]    This value is calculated by dividing the full settlement fund by the approximate number of affected telephone numbers.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

5. **Preliminary Approval:**

5.1.    Plaintiff will file an unopposed motion to preliminarily approve the Settlement.

5.2.    Through his motion to preliminarily approve the Settlement, Plaintiff will request that:

    A.    The Court preliminarily certify the Settlement Class for settlement purposes only, appoint Plaintiff as the representative for the Settlement Class, and appoint Class Counsel as counsel for the Settlement Class;

    B.    The Court preliminarily approve the Settlement as fair, reasonable, and adequate, and within the reasonable range of possible final approval;

    C.    The Court approve the Class Notice and find that the proposed notice plan constitutes the best notice practicable under the circumstances, and that it satisfies due process and Rule 23 of the Federal Rules of Civil Procedure;

    D.    The Court set the date and time for the Fairness Hearing; and

    E.    The Court set the deadline for Settlement Class Members to file Claim Forms and to submit exclusions and objections to the Settlement.

5.3.    Neither Plaintiff nor Defendant will take any action inconsistent with Plaintiff's motion to preliminarily approve the Settlement.

6. **Class Action Fairness Act Notice:**

6.1.    The Claims Administrator will be responsible for directing notice under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. Notice will be served within ten days after Plaintiff files his unopposed motion to preliminarily approve the Settlement.

6.2.    Defendant or the Claims Administrator will provide Class Counsel with a copy of the CAFA notice no later than two days after it is served.

6.3.    Defendant or the Claims Administrator will also file with the Court, at least thirty days prior to the Fairness Hearing, a notice attesting to compliance with CAFA.

7. **Notice to Members of the Settlement Class:**

7.1.    The Claims Administrator will be responsible for all matters relating to the administration of the Settlement.

7.2.    The Claims Administrator's responsibilities will include, but will not be limited to:

    A.    Disseminating notice to potential Settlement Class Members;

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

    B.   Performing a cellular telephone number scrub for certain telephone numbers Plaintiff and Defendant provide to it;

    C.   Sending direct mail notice by postcard, with the Claim Form, to potential Settlement Class Members, where possible;

    D.   Establishing both a dedicated website through which Settlement Class Members can submit claims and a toll-free telephone number for informational purposes;

    E.   Fielding inquiries about the Settlement;

    F.   Processing settlement claims;

    G.   Acting as a liaison between Settlement Class Members, Class Counsel, and counsel for Defendant;

    H.   Approving settlement claims, and rejecting settlement claims where there is evidence of fraud;

    I.   Directing the mailing of settlement checks to Settlement Class Members;

    J.   Performing any other tasks reasonably required of it; and

    K.   Directing notice under CAFA, as described in Section 6.

7.3.    The addresses of potential Settlement Class Members obtained by the Claims Administrator may be subject to confirmation or updating as follows:

    A.   The Claims Administrator may check each address obtained against the United States Post Office National Change of Address Database;

    B.   The Claims Administrator may conduct a reasonable search to locate an updated address for any potential Settlement Class Member whose notice is returned as undeliverable;

    C.   The Claims Administrator will update addresses based on any forwarding information received from the United States Post Office; and

    D.   The Claims Administrator will update addresses based on any requests received from Settlement Class Members.

7.4.    The Claims Administrator will provide weekly updates to Class Counsel and counsel for Defendant regarding the status of its administration.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

7.5.  Not later than sixty days following the Preliminary Approval Date, or as otherwise directed by the Court, the Claims Administrator will mail the Class Notice with the Claim Form to potential Settlement Class Members, where possible.

7.6.  The postcard the Claims Administrator uses to mail the Class Notice and Claim Form to potential Settlement Class Members must include a notation requesting address correction.

7.7.  If any Class Notice is returned with a new address, the Claims Administrator must resend the Class Notice and a Claim Form to the new address.

7.8.  Subject to Section 7.9 of this Agreement, Defendant is responsible for any amounts due to the Claims Administrator prior to the date on which the Settlement Fund (defined below) is established and funded.

7.9.  Defendant will be entitled to an offset for any payments it makes to the Claims Administrator prior to the date on which the Settlement Fund is established and funded, from the Settlement Fund once it is established and funded.

7.10.  The parties will not make statements of any kind to any third party regarding the Settlement prior to the filing of a motion for preliminary approval with the Court, with the exception of potential claims administrators. The parties may make public statements to the Court as necessary to obtain preliminary or final approval of the Settlement, and Class Counsel will not be prohibited from communicating with any Settlement Class Member regarding the Lawsuit or the Settlement.

**8.  Publication of Class Notice:**

8.1.  Not later than sixty days following the Preliminary Approval Date, or as otherwise directed by the Court, the Claims Administrator will arrange for publication of the Class Notice on the settlement website.

**9.  Settlement Website:**

9.1.  The Claims Administrator will build and maintain a dedicated website that includes downloadable information and documents necessary to submit claims. The settlement website will be live not later than forty-five days following the Preliminary Approval Date, or as otherwise directed by the Court.

9.2.  At a minimum, the downloadable information and documents on the settlement website must include, when available, this Agreement, the Class Notice, a Claim Form, Plaintiff's petition for attorneys' fees, expenses, and costs, the Order Preliminarily Approving the Settlement, Plaintiff's second amended class action complaint, and the Final Order and Judgment.

9.3  The Settlement Website domain will be OptumRxTCPAClassActionSettlement.com.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

**10. Final Approval:**

    10.1.   At least ten days prior to the Fairness Hearing, the Class Administrator will provide a sworn declaration attesting to proper service of the Class Notice and Claim Forms, and state the number of claims, objections, and exclusions, if any.

    10.2.   Prior to the Fairness Hearing, Plaintiff will file an unopposed motion to finally approve the Settlement.

    10.3.   Neither Plaintiff nor Defendant will take any action inconsistent with Plaintiff's motion to finally approve the Settlement.

**11. Consideration:**

    11.1.   Defendant will create a non-reversionary settlement fund in the amount of $1,860,000, less any amounts paid to the Claims Administrator per Sections 7.8 and 7.9, to compensate members of the Settlement Class ("Settlement Fund"). The Settlement Fund will be held in escrow at Western Alliance Bank as described in paragraph 11.3, and may be interest bearing.

    11.2.   In consultation with the Claims Administrator, Defendant will fund the Settlement Fund within thirty days of the Court's issuance of the Order Preliminarily Approving the Settlement.

    11.3.   The Claims Administrator will place the Settlement Fund at Western Alliance Bank in an Intrafi Cash Service (ICS) account, which is 100% backed by the FDIC (the "Account"), created by order of the Court, and intended to be a separate taxable entity and qualify as a "qualified settlement fund" ("QSF") within the meaning of Section 1.468B-1 of the Treasury Department Regulations ("Treasury Regulations") promulgated under Section 1.468B of the Internal Revenue Code of 1986, as amended (the "Code"). Defendant will be the "transferor" to the QSF within the meaning of Section 1.468B-1(d)(1) of the Treasury Regulations with respect to the Settlement Fund or any other amount transferred to the QSF pursuant to this Settlement Agreement. The Claims Administrator will be designated as the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. The Claims Administrator will timely provide any statements or make any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including any relation-back election within the meaning of Section 1.468B-1(j) of the Treasury Regulations. The parties agree to the tax treatment of the QSF as set forth in Section 21. All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund. Defendant and each

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

Released Party shall have no responsibility for, interest in, or liability whatsoever with respect to the investment decisions or the actions of the Claim Administrator, or any transactions executed by the Claims Administrator. Defendant and each Released Party further shall not be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for (a) the payment of claims, taxes (including interest and penalties), legal fees, or any other expenses payable from the Settlement Fund; (b) the investment of any Settlement Fund assets; or (c) any act, omission, or determination of the Claims Administrator.

11.4.   Paid from the Settlement Fund will be:

A.   Compensation to Settlement Class Members who timely submit a valid and approved Claim Form calculated on a *pro-rata* basis;

B.   The cost of notice to potential Settlement Class Members and claims administration, including costs associated with identifying potential class members, and any reasonable costs associated with administering the Settlement Fund, including the costs of tax attorneys or accountants;

C.   Litigation costs and expenses, for which Class Counsel will petition the Court;

D.   Reasonable attorneys' fees, calculated as a percentage of the Settlement Fund, for which Class Counsel will petition the Court; and

E.   An incentive award for Plaintiff, for which Class Counsel will petition the Court.

11.5.   Each Settlement Class Member who submits an Approved Claim Form, which provides his or her name, address, and telephone number, either online no later than one hundred five days after the Preliminary Approval Date, or by U.S. Mail with a postmark of no later than one hundred five days after the Preliminary Approval Date, will be entitled to a *pro rata* share of the non-reversionary Settlement Fund after deducting:

A.   Costs and expenses of administrating the Settlement, including notice to potential Settlement Class Members;

B.   Class Counsel's attorneys' fees, subject to the Court's approval;

C.   Class Counsel's litigation costs and expenses not to exceed $40,000.00, subject to the Court's approval; and

D.   An incentive award for Plaintiff, for which Class Counsel will petition the Court.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

11.6.    A Settlement Class Member may submit only one claim, regardless of how many times Defendant called the Settlement Class Member, or how many prerecorded voice messages Defendant delivered to the Settlement Class Member.

11.7.    Each settlement check issued to a Settlement Class Member will be valid for one-hundred-twenty days after it is issued.

11.8.    Any funds not ultimately paid out as the result of uncashed settlement checks will be paid out as a *cy pres* award to the National Legal Aid and Defender Association, subject to the Court's approval.

**12. Exclusions:**

12.1.    Any Settlement Class Member who wishes to exclude himself or herself from the Settlement must mail a written request for exclusion personally signed by the Settlement Class Member to the Class Administrator, postmarked no more than one hundred five days after the Preliminary Approval Date.

12.2.    Through his or her request for exclusion, and subject to the Court's approval, a member of the Settlement Class must include his or her:

    A.  Full name;

    B.  Address;

    C.  Telephone number called by Defendant; and

    D.  A statement that he or she wishes to be excluded from the Settlement.

12.3.    Any Settlement Class Member who submits a valid and timely request for exclusion will neither be bound by the terms of this Agreement, nor receive any of the benefits of the Settlement. Every Settlement Class Member who does not timely and properly submit a written request for exclusion from the Settlement Class will be bound by all proceedings, orders, and judgments in the Lawsuit. The satisfaction of all the Released Claims against Defendant, as well as entry of the Final Order and Judgment, will be binding upon all Settlement Class Members who do not exclude themselves.

12.4.    The Claims Administrator will provide a list of the names of each Settlement Class Member who submitted a valid and timely request for exclusion to Class Counsel and counsel for Defendant within ten days after the deadline for exclusions.

12.5.    Settlement Class Members may exclude themselves on an individual basis only.

12.6.    "Mass" or "class" exclusions submitted by third parties on behalf of a "mass" or "class" of Settlement Class Members are not allowed, and will not be considered valid.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

**13. Objections:**

13.1.  Any Settlement Class Member who wishes to object to the Settlement must mail a written notice of objection to the Class Administrator, Class Counsel, counsel for Defendant, and to the Court, postmarked no more than one hundred five days after the Preliminary Approval Date.

13.2.  Through his or her notice of objection, and subject to the Court's approval, a Settlement Class Member must include:

    A.  His or her full name;

    B.  His or her address;

    C.  His or her telephone number to which Defendant placed a subject artificial or prerecorded voice call from April 20, 2020 through the Preliminary Approval Date, to demonstrate that the objector is a member of the Settlement Class;

    D.  A statement of the objection;

    E.  A description of the facts underlying the objection;

    F.  A description of the legal authorities that support each objection;

    G.  A statement noting whether the objector intends to appear at the Fairness Hearing;

    H.  A list of all witnesses that the objector intends to call by live testimony, deposition testimony, or affidavit or declaration testimony;

    I.  A list of exhibits that the objector intends to present at the Fairness Hearing; and

    J.  A signature from the Settlement Class Member.

13.3.  Settlement Class Members who do not submit a valid and timely objection will be barred from seeking review of the Settlement by appeal, or otherwise.

13.4.  If a Settlement Class Member submits both an objection and an exclusion, he or she will be considered to have submitted an exclusion (and not an objection).

13.5  Any Settlement Class Member who fails to comply with the provisions of Section 13 will waive and forfeit any and all rights the Settlement Class Member may have to appear separately and/or to object, and will be bound by all the terms of the Agreement and by all proceedings, orders, and judgments in the Lawsuit.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

13.6    Class Counsel and the parties shall have the right, but not the obligation, to respond to any objection no later than seven days prior to the Fairness Hearing. The party responding must file a copy of the response with the Court, and must serve a copy, by email or overnight delivery if reasonably possible, to the objector (or counsel for the objector).

## 14. Release:

14.1.    Upon the Court's entry of the Final Order and Judgment, Releasors release and forever discharge the Released Parties from any and all rights, duties, obligations, claims, actions, demands, causes of action, suits, damages (including consequential damages, losses or costs, and punitive damages), attorneys' fees and costs, or liabilities, arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* or similar or related statutes under state law, or any rule, regulation, regulatory promulgation (including, but not limited to, any opinion or declaratory ruling by the Federal Communications Commission or otherwise) applicable to the TCPA or similar or related statutes under state law, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, accrued or which may hereafter accrue through the Preliminary Approval Date, actual or contingent, liquidated or unliquidated, punitive or compensatory, whether the claims are brought directly by or on behalf of any Settlement Class Member in an individual or class action, representative, or in any other capacity, with respect to any form of relief, including, without limitation, damages, restitution, disgorgement, penalties, and injunctive or declaratory relief, that arise out of: (a) clinical adherence artificial or prerecorded calls made by OptumRx, Inc. and directed to a telephone number assigned to a cellular telephone service or VOIP service, or (b) the administration of the Settlement (the "Released Claims").

14.2    In addition, and in consideration of payment of the Settlement Amount specified in paragraph 8 above, each Releasor hereby expressly waives, releases, and forever discharges any and all provisions, rights, and/or benefits conferred by § 1542 of the California Civil Code, which reads:

>        Section 1542. <u>General Release; extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

14.3    Plaintiff and Releasors agree and covenant, and each Releasor will be deemed to have agreed and covenanted, not to sue the Released Parties with respect to any of the Released Claims, and agree to be forever barred from doing so, in any court of law, equity, or any other forum.

14.4    The Releasors acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

Claims and that, notwithstanding the discovery or existence of any such additional or different facts, as to which the Releasors expressly assume the risk, they freely and voluntarily give the release as set forth herein.

**15. Exclusive Remedy:**

15.1.    The relief included in this Agreement is the exclusive remedy of recovery for the Released Claims.

**16. Attorneys' Fees, Costs, and Expenses:**

16.1.    Class Counsel will submit to the Court a request for attorneys' fees to be paid from the Settlement Fund.

16.2.    Class Counsel will submit to the Court a request for reimbursement of reasonable litigation costs and expenses not to exceed $40,000.00 to be paid from the Settlement Fund.

16.3.    The Court's order regarding Class Counsel's request for attorneys' fees, costs, and expenses, will not affect the finality of the Settlement.

16.4.    In the event that the Court declines Class Counsel's request for attorneys' fees, costs, and expenses, or awards less than the amounts sought, the Settlement will continue to be effective and enforceable by the parties.

**17. No Admission of Liability:**

17.1.    This Agreement and all related communications are for settlement purposes only and will not be construed or deemed to be evidence of an admission or concession by the Released Parties with respect to any claim, fault, liability, wrongdoing, or damage whatsoever and will not be construed or deemed to be evidence of any admission of any claim, fault, liability, wrongdoing, or damage or that any person or entity is entitled to relief. Defendant expressly denies all charges of wrongdoing or liability against Defendant arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Lawsuit, and Defendant continues to believe the claims asserted against Defendant in the Lawsuit are without merit. Nothing in this Settlement Agreement shall be construed as an admission by Defendant in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, including, without limitation, that Defendant has engaged in any conduct or practices that violate any federal statute or other law. This Settlement Agreement shall not be admissible for any purpose except in an action to enforce its terms.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

18. **Representations and Warranty:**

18.1.  Class Counsel believes that the Settlement is in the best interests of the Settlement Class Members.

18.2.  Plaintiff warrants that on the date this Agreement is executed, he owns the claims that he asserts in connection with this matter, and that he has not assigned, pledged, sold or otherwise transferred her claims (or an interest in such claims), and that on the Finality Date he will own her claims free and clear of any and all liens, claims, charges, security interests or other encumbrances of any nature whatsoever, except for any contingent legal fees and expenses.

18.3   Each party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the releases contained herein, received legal advice with respect to the advisability of entering this Agreement and the releases, and the legal effects of this Agreement and the releases, and fully understands the effect of this Agreement and the releases. Each party to this Agreement warrants that he, she, or it is acting upon his, her, or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Agreement.

19. **Appeals:**

19.1.  If a Settlement Class Member appeals the Final Order and Judgment, Plaintiff and Defendant agree to support the Settlement on appeal.

19.2.  Nothing contained in this Agreement is intended to preclude Plaintiff, Defendant, or Class Counsel, from appealing any order inconsistent with this Agreement.

20. **Distribution of the Settlement Fund:**

20.1.  Within thirty days of the Finality Date, the Claims Administrator will mail a settlement check to each Settlement Class Member who submitted an Approved Claim Form.

20.2.  Within five days of the Finality Date, the Claims Administrator will pay to Class Counsel from the Settlement Fund the attorneys' fees, costs, and expenses approved by the Court.

20.3.  If any money remains in the non-reversionary Settlement Fund after the date that all initial settlement checks are voided due to non-deposit (*i.e.* checks that Settlement Class Members do not cash), and if the amount that remains is sufficient to issue second checks of at least $5.00 to each Settlement Class Member who cashed an initial settlement check after accounting for the associated expenses of such a distribution, the Claims Administrator will mail a second settlement check, calculated on a *pro rata*

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

basis considering the remaining amount of the non-reversionary Settlement Fund, to
each Settlement Class Member who cashed an initial settlement check.

20.4.    If any money remains in the Settlement Fund after the date that all settlement checks
(*i.e.*, initial settlement checks, and if applicable, second settlement checks) are voided
due to non-deposit (*i.e.* checks that Settlement Class Members do not cash), this amount
will be paid as a *cy pres* award to the National Legal Aid and Defender Association,
subject to the Court's approval.

**21.   Taxes:**

21.1.    Plaintiff and Defendant agree that the account into which the Settlement Fund is
deposited is intended to be and will at all times constitute a "qualified settlement fund"
within the meaning of Treas. Reg. § 1.468B-1. The Claims Administrator will timely
make elections as necessary or advisable to carry out required duties including, if
necessary, the "relation back election" (as defined in Treas. Reg. § 1.468B-1(j)(2))
back to the earliest permitted date. These elections will be made in compliance with the
procedures and requirements contained in applicable Treasury Regulations
promulgated under the Code. It is the responsibility of the Claims Administrator to
cause the timely and proper preparation and delivery of the necessary documentation
for signature by all necessary parties, and thereafter to cause the appropriate filing to
occur.

21.2.    For the purpose of Section 468B of the Code and the Treasury Regulations thereunder,
the Claims Administrator will be designated as the "administrator" of the Settlement
Fund. The Claims Administrator will cause to be timely and properly filed all
informational and other tax returns necessary or advisable with respect to the non-
reversionary Settlement Fund (including, without limitation, tax returns described in
Treas. Reg. § 1.468B-2(k)). These returns will reflect that all taxes (including any
estimated taxes, interest or penalties) on the income earned by the non-reversionary
Settlement Fund are to be paid out of the Settlement Fund.

21.3.    All taxes arising in connection with income earned by the Settlement Fund, including
any taxes or tax detriments that may be imposed upon Defendant with respect to any
income earned by the Settlement Fund for any period during which the Settlement Fund
does not qualify as a "qualified settlement fund" for federal or state income tax
purposes, will be paid by the Claims Administrator from the Settlement Fund.

21.4.    Any person or entity that receives a distribution from the Settlement Fund will be solely
responsible for any taxes or tax-related expenses owed or incurred by that person or
entity by reason of that distribution. These taxes and tax-related expenses will not be
paid from the Settlement Fund.

21.6    In no event will Defendant or any of the other Released Parties have any responsibility
or liability for taxes or tax-related expenses arising in connection with the payment or
distribution of the Settlement Fund to Plaintiff, Settlement Class Members, Class

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

Counsel or any other person or entity. All such taxes and tax-related expenses shall be paid out of the Settlement Fund.

21.7    Defendant shall timely deliver to the Claims Administrator a "Section 1.468B-3 Statement" (as provided in Treas. Reg Section 1.468B-3(e)) with respect to any transfers made to the Settlement Fund.

21.8    The Claims Administrator will engage in reporting to the Internal Revenue Service and such other state and local taxing authorities as may be required by law. The parties acknowledge that the Claims Administrator will comply with all withholding obligations as required under the applicable provisions of the Internal Revenue Code and such other state and local laws as may be applicable, and the regulations promulgated thereunder. In addition, the Claims Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Settlement Class Member any funds necessary to pay such amounts including the establishment of adequate reserves for any taxes and tax-related expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). The Parties agree to cooperate with the Claims Administrator, each other, and their attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

21.9    Defendant makes no representation to Plaintiff, Settlement Class Members, Class Counsel or any other person or entity regarding the appropriate tax treatment of the Settlement Fund, income earned on the Settlement Fund, or any distribution taken from the Settlement Fund.

21.10    The parties agree that payments made to the Settlement Fund are compensatory only and not payments made to satisfy any fines, penalties, punitive damages, or prejudgment interest nor are such payments "to, or at the direction of, a government or governmental entity in relation to the violation of any law or the investigation or inquiry by such government or entity into the potential violation of any law" within the meaning of Section 162(f) of the Code.

22. **Stay:**

22.1.    Plaintiff and Defendant stipulate that all proceedings in connection with this matter should be stayed until the Court issues its decision regarding final approval of the Settlement.

22.2.    The stipulated stay of proceedings will not prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve preliminary and final approval of the Settlement.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

**23. Miscellaneous Provisions:**

23.1.  This Agreement is the entire agreement between Plaintiff and Defendant. All antecedent and contemporaneous extrinsic representations, warranties, or collateral provisions concerning the negotiation and preparation of this Agreement are intended to be discharged and nullified.

23.2.  Neither Plaintiff nor Defendant may modify this Agreement, except by a writing that Plaintiff and Defendant execute and that the Court approves.

23.3.  All notices required by this Agreement, between Plaintiff, Defendant, Class Counsel, and counsel for Defendant, must be sent by first class U.S. mail, by hand delivery, or by electronic mail, to:

> James L. Davidson
> Greenwald Davidson Radbil PLLC
> 5550 Glades Road
> Suite 500
> Boca Raton, Florida 33431
> jdavidson@gdrlawfirm.com
>
> (*Class Counsel*)
>
> Carolyn A. DeLone
> Hogan Lovells US LLP
> 555 Thirteenth Street, NW
> Washington, D.C. 20004
> carrie.delone@hoganlovells.com
>
> (*counsel for Defendant*)

23.4.  Section headings in this Agreement are for convenience and reference only, and are not to be taken to be a part of the provisions of this Agreement, and do not control or affect meanings, constructions or the provisions of this Agreement.

23.5.  Plaintiff and Defendant will exercise their best efforts, take all steps, and expend all efforts that may become necessary to effectuate this Agreement.

23.6.  Plaintiff and Defendant drafted this Agreement equally, and it should not be construed strictly against Plaintiff or Defendant.

23.7.  This Agreement binds successors and assigns of the parties.

23.8.  Plaintiff, Defendant, Class Counsel, and counsel for Defendant, may sign this Agreement in counterparts, and by electronic signature, and the separate signature

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

pages may be combined to create a binding document, which constitutes one instrument.

23.9    Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality, or enforceability of any other provision, hereunder. Provided, however, that the terms of this section shall not apply should any court or tribunal find any part, term, or provision of the release to be illegal or invalid.

23.10    A waiver by one party of any provision or breach of this Agreement by any other party will not constitute a waiver of any other provision or breach of this Agreement.

23.11    This Agreement is made and entered into within and will be governed by, construed, interpreted, and enforced in accordance with the laws of the State of Indiana, without regard to the principles of conflicts of laws.

23.12    This Court shall retain continuing and exclusive jurisdiction over the parties to this Agreement, including the Plaintiff and all Settlement Class Members, for purposes of the administration and enforcement of this Agreement.

23.13    The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by written agreement of the parties and as approved by the Court, without notice to Settlement Class Members. The parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

**24. Termination:**

24.1.    If any of the conditions set forth below occurs and either (a) Plaintiff or (b) Defendant give notice that such party or parties wish to withdraw from this Agreement (subject to the terms below and herein), then this Agreement will terminate and be null and void, and the parties will be returned to the *status quo ante* as if no Settlement had been negotiated or entered into:

(a)    The Court rejects or declines to preliminarily or finally approve this Agreement, after all reasonable efforts are made to obtain preliminary or final approval;

(b)    Any objections to the proposed Settlement are sustained, which results in changes to the Settlement described in this Agreement that the withdrawing party deems in good faith to be material (e.g., because it increases the cost of Settlement or deprives the withdrawing party of a benefit of the Settlement);

18

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

(c)     The Final Order and Judgment of the Settlement described in this Agreement results in changes that the withdrawing party deems in good faith to be material (e.g., because it increases the cost of Settlement or deprives the withdrawing party of a benefit of the Settlement);

(d)     More than 1,000 of the Settlement Class Members exclude themselves from the Settlement described in this Agreement, as set out in Section 12; or

(e)     The Final Order and Judgment of the Settlement described in this Agreement is (i) substantially modified by an appellate court and the withdrawing party deems any such modification in good faith to be material (e.g., because it increases the cost of Settlement or deprives the withdrawing party of a benefit of the Settlement) or (ii) reversed by an appellate court.

24.2    Prior to termination, Plaintiff and Defendant must negotiate in good faith to modify the terms of this Agreement in order to revive the Settlement.

24.3    If either Plaintiff or Defendant terminates this Agreement as provided herein, the Agreement will be of no force and effect, and the parties' rights and defenses will be restored, without prejudice, to their respective positions as if this Agreement had never been executed, and any orders entered by the Court in connection with this Agreement will be vacated. However, any payments made to the Claims Administrator for services rendered to the date of termination will not be refunded to Defendant.

24.4    In the event that the Agreement is not approved, or is terminated, canceled, or fails to become effective for any reason, the money remaining in the Settlement Fund, less expenses and taxes incurred or due and owing and payable from the Settlement Fund in accordance with this Agreement, will be returned to Defendant within sixty days of the event that causes the Agreement to not become effective.

## 25. Survival:

25.1.   The Settlement will be unaffected by any subsequent change in law regarding the TCPA, its interpretation, and its application, whether from Congress, the Federal Communications Commission, the Consumer Financial Protection Bureau, any other agency, courts, or otherwise.

## 26. Dismissal:

26.1    The Final Order and Judgment submitted to the Court will include a provision dismissing this Lawsuit with prejudice.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

**27. Confidentiality and Publicity:**

27.1    It is agreed that the Uniform Stipulated Protective Order entered in this Lawsuit will continue to govern all confidential information produced in this case, as defined and provided for in the Uniform Stipulated Protective Order. Nothing in the Agreement shall require attorney work product or pleading files to be returned or destroyed; however, any party or attorney retaining such work product or pleading files shall continue to treat such as Confidential Information pursuant to the terms of the Uniform Stipulated Protective Order.

27.2    The parties agree not to make any statements, written or verbal, or to cause or encourage any other person to make any statements, written or verbal, that defame or disparage the personal or business reputation, practices, or conduct of the parties, or their respective counsel concerning all Released Claims, as well as the litigation of this Lawsuit, the Agreement, and any discussions, interactions, or negotiations of the Agreement by the parties and their counsel; provided, however, nothing herein shall preclude any party or its agents, representatives, or counsel from any good faith response to any inquiries under oath or in response to a government inquiry or from making statements in the course of legal proceedings, or from non-public privileged communications with Settlement Class Members with regard to the Settlement. None of the foregoing is intended to limit the parties' counsels' ability to practice law, and to the extent there is any conflict with any rules of professional responsibility, rules of professional responsibility govern.

27.3    The parties agree they will not issue press releases or initiate any public statements regarding the Settlement or Agreement that specifically reference OptumRx, Inc. by name as a defendant to the Lawsuit with the exception of neutrally-worded language consistent with that contained in the Class Notice or the agreement. The parties may also issue press releases or initiate public statements that refer to the public orders in this Lawsuit and publicly available information filed in connection with this Lawsuit. Neither Class Counsel nor the parties will make statements of any kind to any third-party regarding the Settlement prior to the filing of a motion for Preliminary Approval with the Court, with the exception of the potential claims administrators. The Parties may make public statements to the Court as necessary to obtain Preliminary or Final Approval of the Settlement, and Class Counsel will not be prohibited from communicating with any person in the Settlement Class regarding the Action or the Settlement. None of the foregoing is intended to limit the parties' counsels' ability to practice law, and to the extent there is any conflict with any rules of professional responsibility, rules of professional responsibility govern.

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

**28. Signatures:**

Brad Patterson                                                    Date

_____                        10/08/2025

_____                        _____

James L. Davidson
Counsel for Brad Patterson                                       Date

_____                        10/08/25
James Davidson (Oct 8, 2025 12:19:18 EDT)
_____                        _____

Anthony I. Paronich
Counsel for Brad Patterson                                       Date

_____                        10/08/25
Anthony Paronich (Oct 8, 2025 12:17:16 EDT)
_____                        _____

OptumRx, Inc.                                                    Date

_____                        _____

Carolyn A. DeLone
Counsel OptumRx, Inc.                                            Date

_____                        _____

21

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

**28. Signatures:**

Brad Patterson                                                    Date

_____          _____

James L. Davidson                                           Date
Counsel for Brad Patterson

_____          _____

Anthony I. Paronich                                         Date
Counsel for Brad Patterson

_____          _____

OptumRx, Inc.                                                 Date

_____          _____

Carolyn A. DeLone                                          Date
Counsel OptumRx, Inc.

Signed by:

*Carolyn A. DeLone*                                      October 8, 2025 | 10:55 AM EDT
476A7615C64E4C7...

*Class Action Settlement Agreement – Patterson v. OptumRx, Inc.*

## 28. Signatures:

Brad Patterson                                                    Date

_____        _____


James L. Davidson                                                Date
Counsel for Brad Patterson

_____        _____


Anthony I. Paronich                                              Date
Counsel for Brad Patterson

_____        _____


OptumRx, Inc.                                                    Date

Signed by:
*Samantha Barber*                                               October 8, 2025 | 10:05 AM EDT
FBF267FA293E45B...


Carolyn A. DeLone                                               Date
Counsel OptumRx, Inc.

_____        _____

Exhibit "1"

**What is this lawsuit about?** Plaintiff Brad Patterson filed a class action lawsuit against OptumRx, Inc. ("OptumRx"), alleging OptumRx violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by placing telephone calls to cellular telephones using an artificial or prerecorded voice, absent prior express consent. OptumRx denies Mr. Patterson's allegations, and denies it violated the TCPA. The court has not decided who is right or wrong. The parties have agreed to a settlement.

**Why did you receive this notice?** You received this notice because OptumRx's records identified you as a potential member of the following settlement class: "All persons and entities throughout the United States (1) to whom OptumRx, Inc. placed, or caused to be placed, a clinical adherence call, other than calls regarding prescription refill reminders or calls regarding COVID-19 vaccines, (2) directed to a number assigned to a cellular telephone or VOIP service, but not assigned to an OptumRx, Inc. customer or account holder, (3) in connection with which OptumRx, Inc. used, or caused to be used, an artificial or prerecorded voice, (4) from April 20, 2020 through [the date of preliminary approval].

**What does the settlement provide?** OptumRx will establish a settlement fund of $1,860,000. Out of the settlement fund will be paid: (1) settlement compensation to approved, participating settlement class members; (2) an award of attorneys' fees of up to thirty-six percent of the settlement fund, after deducting the costs of notice and settlement administration and litigation expenses, subject to the court's approval; (3) litigation costs and expenses incurred by class counsel in litigating the claims in this matter not to exceed $40,000, subject to the court's approval; (4) an incentive award for Mr. Patterson not to exceed $10,000, subject to the court's approval; and (5) costs of notice and administration estimated to be approximately $207,750. It is estimated that each valid, approved claimant will receive between $[___] and $[___]. If you elect to participate in the settlement, you may receive more or less, depending on the number of other settlement class members who also elect to participate.

**What are your legal rights and options?** If you fall within the settlement class, you have four options. First, you may timely complete and return the claim form found on the backside of this postcard, or timely submit a claim online at www.OptumRxTCPAClassActionSettlement.com. Settlement class members who timely submit valid, approved claims will receive a proportionate share of the settlement fund after deducting attorneys' fees, costs, expenses, and an incentive award, and will release certain TCPA and TCPA-related claims they may have against OptumRx and related persons and entities. Second, you may do nothing, in which case you will not receive a share of the settlement fund, but you will release certain TCPA and TCPA-related claims you may have against OptumRx and related persons and entities. Third, you may exclude yourself from the settlement, in which case you will neither receive a share of the settlement fund, nor release any TCPA or TCPA-related claims you may have against OptumRx and related persons and entities. Or fourth, you may object to the settlement. The deadline for you to submit a claim, exclusion request, or objection is [date]. To obtain additional information about your legal rights and options, or to access the full class notice, motions for approval, motion for attorneys' fees, and other important documents, visit www.OptumRxTCPAClassActionSettlement.com, or contact the settlement administrator by writing to *Patterson v. OptumRx, Inc.* Settlement Administrator, [address], [city], [state] [zip code], or by calling [telephone number].

**When is the final fairness hearing?** The court will hold a final fairness hearing on [date] at [time]. The hearing will take place at the United States District Court for the Southern District of Indiana, 46 East Ohio Street, Indianapolis, Indiana 46204. At the final fairness hearing, the court will consider whether the settlement is fair, reasonable, and adequate, and, if so, whether final approval of the settlement should be granted. The court will also hear objections to the settlement, if any. The court may make a decision at that time, postpone a decision, or continue the hearing, or elect to hold the hearing virtually.

**Front Inside**

---

**This is a notice of a settlement of a class action lawsuit.**

**This is not a notice of a lawsuit against you.**

If you are a person to whom OptumRx, Inc. placed, or caused to be placed, a clinical adherence call, other than calls regarding prescription refill reminders or calls regarding COVID-19 vaccines, directed to a number assigned to a cellular telephone or VOIP service, but not assigned to an OptumRx, Inc. customer or account holder, in connection with which OptumRx, Inc. used, or caused to be used, an artificial or prerecorded voice from April 20, 2020 through [the date the Court preliminarily approves the parties' class action settlement], you may be entitled to compensation as a result of the settlement in this class action lawsuit.

*Patterson vs. OptumRx, Inc.*, No. 1:24-cv-00689-TWP-KMB  (S.D. Ind.)

**A federal court authorized this notice.**

**This is not a solicitation from a lawyer.**

**Please read this notice carefully. It summarily explains your potential rights and options to participate in a class action settlement.**

**Front Outside**

*Patterson v. OptumRx, Inc.*
c/o [administrator]
[address]
[city], [state] [zip]

Permit
Info here

*Bar Code To Be Placed Here*

Postal Service: Please do not mark Barcode

**ADDRESS SERVICE REQUESTED**

CLAIM ID: << ID>>
<<Name>>
<<Address>>
<<City>>, <<State>> <<Zip>>

Carefully separate at perforation

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

*Patterson vs. OptumRx, Inc.*, No. 1:24-cv-00689 -TWP-KMB (S.D. Ind.)

**<u>SETTLEMENT CLAIM FORM</u>**

[admin] ID: «[Admin] ID»                    Name/Address Changes:
«First Name» «Last Name»
«Address1»
«City», «State» «Zip»

     OptumRx, Inc. placed a clinical adherence call—other than calls regarding a prescription refill reminder or calls regarding a COVID-19 vaccine—to my cellular telephone or my VOIP service telephone, using an artificial or prerecorded voice, between April 20, 2020 and [the date the Court preliminarily approves the parties' class action settlement], even though I was not an OptumRx, Inc. customer or account holder. I wish to participate in this settlement.

Signature: _____                    Telephone number at which I received the call(s):

Date of signature: _____

**Bottom Inside**

**To receive a payment you must enter all requested information above, and sign**
**and mail this settlement claim form, postmarked on or before [date].**

You may also submit a claim electronically at www.OptumRxTCPAClassActionSettlement.com.com.

**IF YOU MOVE, send your CHANGE OF ADDRESS to the**
**Settlement Administrator at the address on the backside of this form.**

---

**Bottom Outside**

Postage

*Bar Code To Be Placed Here*

Postal Service: Please do not mark Barcode

*Patterson v. OptumRx, Inc.*
**Settlement Administrator**
**[address]**
**[city], [state] [zip code]**

**This is a notice of a settlement of a class action lawsuit.**

**This is <u>not</u> a notice of a lawsuit against you.**

If you are a person to whose cellular telephone number or VOIP line OptumRx, Inc. ("OptumRx") placed a clinical adherence call, other than calls regarding prescription refill reminders or calls regarding COVID-19 vaccines, in connection with which OptumRx used, or caused to be used, an artificial or prerecorded voice, from April 20, 2020 through [the date the Court preliminarily approves the parties' class action settlement], and you were not an OptumRx customer or account holder, you may be entitled to compensation as a result of the settlement in the class action lawsuit captioned:

*Patterson vs. OptumRx, Inc.*, No. 1:24-cv-00689-TWP-KMB (S.D. Ind.)

**A federal court authorized this notice.**

**This is <u>not</u> a solicitation from a lawyer.**

**Please read this notice carefully.**

**It explains your rights and options to participate in the class action settlement.**

- The settlement will result in a $1,860,000 settlement fund to fully settle and release certain claims of persons who are not OptumRx customers or account holders to whose cellular telephone numbers or VOIP lines OptumRx placed a clinical adherence call, other than calls regarding prescription refill reminders or calls regarding COVID-19 vaccines, from April 20, 2020 through [the date the Court preliminarily approves the parties' class action settlement].

- The settlement fund will be used to pay settlement amounts to approved settlement class members who elect to participate, after deducting the costs of settlement notice and administration, attorneys' fees, litigation costs and expenses, and an incentive award.

- If you are a settlement class member, your legal rights are affected, and you now have a choice to make:

| | |
|---|---|
| **SUBMIT A TIMELY CLAIM FORM:** | If you timely submit a valid, approved claim form by [date], you will receive a pro rata share of the settlement fund after certain deductions, and you will release certain Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, claims, and TCPA-related claims, you may have against OptumRx and related persons and entities. |
| **DO NOTHING:** | If you do nothing, you will <u>not</u> receive a share of the settlement fund, but if you are a settlement class member you will release certain TCPA and TCPA-related claims you may have against OptumRx and related persons and entities. |
| **EXCLUDE YOURSELF:** | If you exclude yourself from the settlement, you will <u>not</u> receive a share of the settlement fund, and you will <u>not</u> release any TCPA or TCPA-related claims you may have against OptumRx and related persons and entities. The deadline to exclude yourself is [date]. |
| **OBJECT:** | Write to the court about why you do not like the settlement. The deadline to object is [date]. |

### Why is this notice available?

This is a notice of a settlement in a class action lawsuit. The settlement would resolve the class action lawsuit Brad Patterson filed against OptumRx. Please read this notice carefully. It explains the class action lawsuit, the settlement, and legal rights you may have, including the process for receiving a settlement check, excluding yourself from the settlement, or objecting to the settlement.

### What is the class action about?

Mr. Patterson filed a class action lawsuit against OptumRx alleging that OptumRx violated the TCPA by placing certain calls relating to clinical adherence to cellular telephone numbers using an artificial or prerecorded voice, absent prior express consent. The TCPA allows for damages in the amount of $500 per violation, and up to $1,500 for willful violations. However, prior express consent is a complete defense to a claim under the TCPA. You can find additional information about Mr. Patterson's claims in his class action complaint, which is available at www.OptumRxTCPAClassActionSettlement.com in the [court documents section].

## Why is this a class action?

In a class action, one or more people called "class representatives" file a class action lawsuit on behalf of people who have similar claims. All of these people together are a "class" or "class members." The court accordingly resolves claims for all class members at once, except for those who first exclude themselves from the class.

## Why is there a settlement?

Mr. Patterson, on the one hand, and OptumRx, on the other, have agreed to settle the class action lawsuit to avoid the time, risk, and expense associated with it, and to achieve a final resolution of the disputed claims. Under the settlement, settlement class members will obtain a payment in settlement of claims Mr. Patterson raised in the class action lawsuit. Mr. Patterson and his attorneys think the settlement is fair and reasonable.

## How do you know if your claims are included in the settlement?

The settlement resolves claims on behalf of the following settlement class:

All persons throughout the United States (1) to whom OptumRx, Inc. placed, or caused to be placed, a clinical adherence call, other than calls regarding prescription refill reminders or calls regarding COVID-19 vaccines, (2) directed to a number assigned to a cellular telephone or VOIP service, but not assigned to an OptumRx, Inc. customer or account holder, (3) in connection with which OptumRx, Inc. used, or caused to be used, an artificial or prerecorded voice, (4) from April 20, 2020 through [the date of preliminary approval].

## What does the settlement provide?

OptumRx will establish a settlement fund in the amount of $1,860,000 to compensate members of the settlement class. Out of the settlement fund will be paid:

      a.      Settlement compensation to participating settlement class members;

      b.      Notice and settlement administration costs estimated to be approximately $207,750.

      c.      An award of attorneys' fees of up to thirty-six percent of the settlement fund, after deducting notice and settlement administration costs and litigation expenses, subject to the court's approval; and

      d.      An incentive award for the named Plaintiff not to exceed $10,000, subject to the court's approval; and

      e.      Litigation costs and expenses incurred in litigating the TCPA claims in this matter not to exceed $40,000, subject to the court's approval.

Each member of the settlement class who submits a timely, valid, and approved claim form will be entitled, subject to the provisions of the settlement agreement, to his or her equal share of the $1,860,000 settlement fund as it exists after deducting:

      a.     Notice and settlement administration costs (including related taxes and expenses);

      b.     An award of attorneys' fees;

      c.     An incentive award for the named Plaintiff; and

      d.     Litigation costs and expenses incurred in litigating the claims in this matter.

It is estimated that each participating member of the settlement class will receive between $[   ] and $[   ]. The actual amount each participating member of the settlement class will receive may be more or less depending on the number of settlement class members who submit timely, valid, and approved claims.

## How can you get a payment?

You must mail a valid, approved claim form to the *Patterson v. OptumRx, Inc.* Settlement Administrator, [address], [city], [state] [zip code] postmarked by [date]. Or you must submit a valid, approved claim through www.OptumRxTCPAClassActionSettlement.com by [date].

## When will you be paid?

If the court grants final approval of the settlement, settlement checks will be mailed to settlement class members who timely mailed or submitted valid, approved claim forms no later than 30 days after the judgment in the lawsuit becomes final. If there is an appeal of the settlement, payment may be delayed.

## What rights are you giving up in connection with this settlement?

If you fall within the settlement class, and unless you exclude yourself from the settlement, you will give up your right to sue or continue a lawsuit against OptumRx over the released claims, as defined in the settlement agreement. Giving up your legal claims is called a release. If you fall within the settlement class, unless you formally exclude yourself from the settlement, you will release certain TCPA claims you may have against OptumRx.

For more information about the release, released parties, and released claims, you may obtain a copy of the class action settlement agreement from the settlement website, www. OptumRxTCPAClassActionSettlement.com, or from the clerk of the United States District Court for the Southern District of Indiana.

**How can you exclude yourself from the settlement?**

If you fall within the settlement class, you may exclude yourself from the settlement, in which case you will <u>not</u> receive a payment, and you will <u>not</u> release any TCPA claims you may have against OptumRx. If you fall within the settlement class, and if you wish to exclude yourself from the settlement, you must mail a written request for exclusion to the claims administrator at the following address, postmarked by [date]:

*Patterson v. OptumRx, Inc.* Settlement Administrator
ATTN: EXCLUSION REQUEST
[address]
[city], [state] [zip code]

You must include in your request for exclusion your:

    a.      Full name;

    b.      Address;

    c.      Telephone number called by OptumRx demonstrating that you are a member of the settlement class; and

    d.      Clear and unambiguous statement that you wish to be excluded from the settlement, such as "I request to be excluded from the settlement in the *Patterson v. OptumRx, Inc.* action."

You must sign the request personally. If any person signs on your behalf, that person must attach a copy of the power of attorney authorizing that signature.

**When and where will the court decide whether to approve the settlement?**

The court will hold a final fairness hearing on [date], at [time]. The hearing will take place at the United States District Court for the Southern District of Indiana, 46 East Ohio Street, Indianapolis, IN 46204. At the final fairness hearing, the court will consider whether the settlement is fair, reasonable, and adequate and, if so, whether final approval of the settlement should be granted. The court will also hear objections to the settlement, if any. The court may make a decision at that time, postpone a decision, or continue the hearing or to hold the hearing virtually.

The date of the final fairness hearing may change without further notice. Settlement class members should check the settlement website, www. OptumRxTCPAClassActionSettlement.com, or the court's Public Access to Court Electronic Records ("PACER") site to confirm that the date has not changed.

**Do you have to attend the final fairness hearing?**

No, there is no requirement that you attend the final fairness hearing. However, you are welcome to attend the hearing at your own expense. You cannot speak at the hearing if you have excluded yourself from the settlement class because the settlement no longer affects your legal rights.

**What if you want to object to the settlement?**

If you fall within the settlement class, and if you do not exclude yourself from the settlement class, you can object to the settlement, or any part of it, if you do not believe it is fair, reasonable, and adequate. If you fall within the settlement class, and if you wish to object, you must mail a written notice of objection, postmarked by [date], to class counsel, counsel for OptumRx, and to the Court, at the following addresses:

| Class Counsel: | Counsel for OptumRx: | The Court: |
|---|---|---|
| James L. Davidson<br>Greenwald Davidson Radbil PLLC<br>5550 Glades Road<br>Suite 500<br>Boca Raton, FL 33431 | Carolyn A. DeLone<br>Hogan Lovells US LLP<br>555 Thirteenth Street, NW<br>Washington, D.C. 20004 | United States District Court for the Southern District of Indiana<br>46 East Ohio Street<br>Indianapolis, IN 46204 |

You must include in your objection your:

        a.      Full name;

        b.      Address;

        c.      Telephone number to which OptumRx placed a subject artificial or prerecorded voice call between April 20, 2020 and [the date the Court preliminarily approves the parties' class action settlement], to demonstrate that you are a member of the settlement class;

        d.      Statement of the objection;

        e.      Description of the facts underlying the objection;

        f.      Description of the legal authorities that support each objection;

        g.      Statement noting whether you intend to appear at the Fairness Hearing;

        h.      List of all witnesses that you intend to call by live testimony, deposition testimony, or affidavit or declaration testimony;

        i.      List of exhibits that you intend to present at the Fairness Hearing; and

j.    Signature.

By filing an objection, you can ask the court to deny approval of the settlement. But you cannot ask the court to order a different settlement. The court can only approve or reject the settlement. If the court denies approval, no settlement payments will be sent out and the class action lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you fall within the settlement class, and if you submit a timely written objection, you may, but are not required to, appear at the final fairness hearing. If you appear through an attorney, you are responsible for hiring and paying that attorney.

## By when must you enter an appearance?

Any settlement class member who objects to the settlement and wishes to enter an appearance must do so by [date]. To enter an appearance, you must file with the clerk of the court a written notice of your appearance, and you must serve a copy of that notice, by U.S. mail or hand-delivery, upon class counsel and counsel for OptumRx, at the addresses set forth in this notice.

## What if you do nothing?

If you are a member of the settlement class, you do nothing, and the court approves the settlement agreement, you will not receive a share of the settlement fund, but you will release certain TCPA and TCPA-related claims you may have against OptumRx and related persons and entities. If you fall within the settlement class, unless you exclude yourself from the settlement, you will not be able to sue or continue a lawsuit against OptumRx and related persons and entities over the released claims.

## What will happen if the court does not approve the settlement?

If the court does not finally approve the settlement, or if it finally approves the settlement and the approval is reversed on appeal, or if the settlement does not become final for some other reason, you will receive no benefits from the settlement, and the class action lawsuit will continue.

## Who is Mr. Patterson's attorney?

Mr. Patterson's attorney is:

James L. Davidson
Greenwald Davidson Radbil PLLC
5550 Glades Road
Suite 500
Boca Raton, FL 33431

The court has appointed Mr. Patterson's attorney to act as class counsel. You do not have to pay class counsel. If you want to be represented by your own lawyer, and have that lawyer appear in court for you in this case, you must hire one at your own expense.

### Who is OptumRx's attorney?

OptumRx's attorney is:

> Carolyn A. DeLone
> Hogan Lovells US LLP
> 555 Thirteenth Street, NW
> Washington, D.C. 20004

### Before what court is this matter pending?

Mr. Patterson filed his class action lawsuit in the following court:

> United States District Court for the Southern District of Indiana
> 46 East Ohio Street
> Indianapolis, IN 46204

### Where can you get additional information?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www.OptumRxTCPAClassActionSettlement.com, by contacting class counsel, by accessing the court docket in this case, for a fee, through the court's PACER system, or by visiting the office of the clerk of the court for the United States District Court for the Southern District of Indiana.

Or, to obtain additional information about this matter, please contact:

> *Patterson v. OptumRx, Inc.* Settlement Administrator
> [address]
> [city], [state] [zip code]
> [Telephone number]

Please do not call the judge about this class action. Neither he, nor any court personnel, will be able to give you advice about this class action. Furthermore, because neither OptumRx nor OptumRx's attorneys represent you, they cannot give you legal advice about this class action.

### Important Dates

| [Date]: | Order Preliminarily Approving the Settlement Entered |
|---|---|
| [Date]: | Defendant to fund Settlement Fund (thirty days after entry of Order Preliminarily Approving the Settlement) |

[Date]:                          Notice Sent (sixty days after entry of Order Preliminarily Approving the Settlement)

[Date]:                          Attorneys' Fees Petition Filed (seventy days after entry of Order Preliminarily Approving the Settlement)

[Date]:                          Opposition to Attorneys' Fees Petition (one hundred five days after entry of Order Preliminarily Approving the Settlement)

[Date]:                          Deadline to Submit Claims, Send Exclusion, or File Objection (one hundred five days after entry of Order Preliminarily Approving the Settlement)

[Date]:                          Reply in Support of Attorneys' Fees Petition (fourteen days after the deadline for settlement class members to submit claims, object to, or exclude themselves from, the settlement)

[Date]:                          Motion for Final Approval Filed (thirty days before final fairness hearing)

[Date]:                          Opposition to Motion for Final Approval Filed (fourteen days before final fairness hearing)

[Date]:                          Class Administrator will provide a sworn declaration attesting to proper service of the Class Notice and Claim Forms, and state the number of claims, objections, and opt outs, if any (ten days prior to Final Fairness Hearing)

[Date]:                          Reply in support of Motion for Final Approval (seven days before final fairness hearing)

[Date]:                          Deadline for the parties to respond to any objection (seven days before final fairness hearing)

[Date]:                          Final Fairness Hearing

Exhibit "2"

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| Brad Patterson, *on behalf of himself and others similarly situated,* | ) ) ) | Civil Action No.: 1:24-cv-00689-TWP-KMB |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| OptumRx, Inc. | ) ) | |
| Defendant. | ) ) | |

---

**(PROPOSED) ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT**

This Court is advised that the parties to this action, Brad Patterson ("Plaintiff") and OptumRx, Inc. ("Defendant"), through their respective counsel, have agreed, subject to this Court's approval and following notice to the settlement class members and a hearing, to settle the above-captioned lawsuit ("Lawsuit") upon the terms and conditions set forth in the parties' class action settlement agreement ("Agreement"), which Plaintiff filed with this Court:

Based on the Agreement and all of the files, records, and proceedings in this matter, and upon preliminary examination, the proposed settlement appears fair, reasonable, and adequate, and a hearing should and will be held on **[date]**, after notice to the settlement class members, to confirm that the settlement is fair, reasonable, and adequate, and to determine whether a final order and judgment should be entered in this Lawsuit:

IT IS HEREBY ORDERED:

This Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties.

In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453,

1

and 1711-1715, Defendant will cause to be served written notice of the class settlement on the United States Attorney General and the Attorneys General of each state in which any settlement class member resides.

This Court preliminarily certifies this case as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of the following settlement class:

> All persons throughout the United States (1) to whom OptumRx, Inc. placed, or caused to be placed, a clinical adherence call, other than calls regarding prescription refill reminders or calls regarding COVID-19 vaccines, (2) directed to a number assigned to a cellular telephone or VOIP service, but not assigned to an OptumRx, Inc. customer or account holder, (3) in connection with which OptumRx, Inc. used, or caused to be used, an artificial or prerecorded voice, (4) from April 20, 2020 through the date of preliminary approval of the settlement.

This Court appoints Plaintiff as the representative for the settlement class, and appoints Anthony Paronich of Paronich Law, P.C. and James Davidson of Greenwald Davidson Radbil PLLC ("GDR") as class counsel for the settlement class.

This Court preliminarily finds, for settlement purposes, that this action satisfies the applicable prerequisites for class action treatment under Rule 23, namely:

A.    The settlement class is so numerous that joinder of all members is impracticable. Rule 23(a) requires that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The parties represent that there are tens of thousands of persons who may potentially meet the settlement class definition. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("Although no magic number exists for satisfying the numerosity requirement, the Seventh Circuit has held that "[e]ven if the class were limited to 40 [members] ... that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual

2

actions.") (quoting *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969));

      B.     Common questions exist as to each settlement class member: Rule 23(a)(2) requires the existence of common questions of law or fact. *See* Fed. R. Civ. P. 23(a)(2). Here each settlement class member is alleged to have suffered same alleged injury: receipt of at least one artificial or prerecorded voice call from Defendant regarding clinical adherence, except calls regarding prescription refill reminders, including related to COVID-19 vaccines, directed to a number assigned to a cellular telephone or VOIP service, but not assigned to an OptumRx, Inc. customer or account holder. *Id*. at 224 ("The proposed class also satisfies commonality and typicality. Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) ("Here there is a common injury, resulting from receipt of the allegedly offending calls . . . . The Court likewise determines that there are questions of law or fact common to each class member.");

      C.     Plaintiff's claims are typical of the claims of the settlement class members. *See Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016 (McKinney, J.) ("Mr. Johnson claims that he received calls after Navient was told that the party with whom they wished to communicate was no longer available at the number called. This is typical of the described class members.");

      D.     Plaintiff and class counsel will fairly and adequately protect the interests of all of settlement class members. *Id.* ("Navient presents no substantive objections to the appointment of Greenwald Davidson Radbil PLLC as class counsel and the Court concludes from the evidence in the record that the firm is experienced in consumer class action practice and will adequately

represent the interests of the class."); *Birchmeier*, 302 F.R.D. at 252 ("For this reason, and because
the named plaintiffs received the same type of call as the other class members, their claims are
typical of those of the class.");

E.      Questions common to settlement class members predominate over any questions
affecting only individual members. A proposed class satisfies Rule 23(b)(3) if "the questions of
law or fact common to class members predominate over any questions affecting only individual
members, and ... a class action is superior to other available methods for fairly and efficiently
adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here the common questions, such as
including whether Defendant placed artificial or prerecorded to cellular telephone numbers are the
main questions in this case, and can be resolved on a class-wide basis. Therefore, predominance
is satisfied.

F.      A class action is superior to other available methods for the fair and efficient
adjudication of this matter. In general, litigating TCPA claims as part of a class action is superior
to litigating them in successive individual lawsuits. *See Knapper v. Cox Commc'ns, Inc.*, 329
F.R.D. 238, 247 (D. Ariz. 2019) (noting in certifying a TCPA class: "The Court is persuaded that
putative class members who would ultimately become part of the class would have little incentive
to prosecute their claims on their own. Should individual putative class members choose to file
claims on their own, given the potential class size and the relatively small amount of statutory
damages for each case, individual litigation would not promote efficiency or reduce litigation
costs. . . . Therefore, the Court finds that a class action is a superior method to adjudicate this
matter."). As well, here, no one class member has an interest in controlling the prosecution of this
action. Simply, the claims of all members of the settlement class are identical, they arise from the
same standardized conduct, and they result in uniform damages calculations. *See James v.*

*JPMorgan Chase Bank, N.A.*, No. 15–2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ("This class action, which resolves the controversy more fairly and efficiently than a series of individual actions, satisfies Rule 23(b)(3)'s superiority requirement. Because the TCPA permits a maximum award of $500 absent a willful violation, each class member lacks a strong financial interest in controlling the prosecution of his action.").

This Court also preliminarily finds that the settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the settlement class members, when considering, in their totality, the following factors: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

This Court also considered the following factors in preliminarily finding that the settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the settlement class members:

(A)     whether Plaintiff and class counsel have adequately represented the class;

(B)     whether the proposal was negotiated at arm's length;

(C)     whether the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    whether the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

A third-party settlement administrator—Kroll Settlement Administration LLC ("Kroll")——will administer the settlement and distribute notice of the settlement to the settlement class members. Kroll will be responsible for mailing the approved class action notices and settlement checks to the settlement class members. All reasonable costs of notice and administration will be paid from the $1,860,000 common fund.

This Court approves the form and substance of the proposed notice of the class action settlement, which includes the postcard notice, the detachable claim form, and the question-and-answer notice to appear on the dedicated settlement website.

The proposed notice and method for notifying the settlement class members of the settlement and its terms and conditions meet the requirements of Rule 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled to the notice. *See* Fed. R. Civ. P. 23(c)(2)(B).

This Court additionally finds that the proposed notice is clearly designed to advise the settlement class members of their rights.

In accordance with the Agreement, the settlement administrator will mail the notice to the settlement class members as expeditiously as possible, but in no event later than 60 days after this Court's entry of this order, *i.e.*, **[date]**.

Any settlement class member who desires to be excluded from the settlement must send a

written request for exclusion to the settlement administrator with a postmark date no later than 105 days after this Court's entry of this order, *i.e.*, no later than **[date]**. To be effective, the written request for exclusion must state the settlement class member's full name, address, telephone number called by Defendant demonstrating membership in the settlement class, and a clear and unambiguous statement demonstrating a wish to be excluded from the settlement, such as "I request to be excluded from the settlement in the *Patterson v. OptumRx, Inc.* action." A settlement class member who requests to be excluded from the settlement must sign the request personally, or, if any person signs on the settlement class member's behalf, that person must attach a copy of the power of attorney authorizing that signature. A settlement class member may exclude himself or herself on an individual basis only. "Mass" or "class" opt-outs, whether submitted by third parties on behalf of a "mass" or "class" of settlement class members or multiple settlement class members are not allowed, and will not be permitted by the Court.

Any settlement class member who submits a valid and timely request for exclusion will not be bound by the terms of the Agreement. Any settlement class member who fails to submit a valid and timely request for exclusion will be considered a settlement class member and will be bound by the terms of the Agreement.

Any settlement class member who intends to object to the fairness of the proposed settlement must file a written objection with this Court within 105 days after this Court's entry of this order, *i.e.*, no later than **[date]**. Further, any such settlement class member must, within the same time period, provide a copy of the written objection to:

> James L. Davidson
> Greenwald Davidson Radbil PLLC
> 5550 Glades Road
> Suite 500
> Boca Raton, FL 33431

7

Carolyn A. DeLone
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004

United States District Court for the Southern District of Indiana
46 East Ohio Street
Indianapolis, IN 46204

To be effective, a notice of intent to object to the settlement must include the settlement

class member's:

a.      Full name;

b.      Address;

c.      Telephone number to which Defendant placed a subject artificial or prerecorded voice call from April 20, 2020 through **[the date the Court preliminarily approves the parties' class action settlement]**, to demonstrate that the objector is a member of the settlement class;

d.      A statement of the objection;

e.      A description of the facts underlying the objection;

f.      A description of the legal authorities that support each objection;

g.      A statement noting whether the objector intends to appear at the fairness hearing;

h.      A list of all witnesses that the objector intends to call by live testimony, deposition testimony, or affidavit or declaration testimony;

i.      A list of exhibits that the objector intends to present at the fairness hearing; and

j.      A signature from the settlement class member.

Any settlement class member who has timely filed an objection may appear at the final

fairness hearing, in person or by counsel, to be heard to the extent allowed by this Court, applying

applicable law, in opposition to the fairness, reasonableness and adequacy of the proposed

settlement, and on the application for an award of attorneys' fees, costs, and litigation expenses

Any objection that includes a request for exclusion will be treated as an exclusion and not an objection. And any settlement class member who submits both an exclusion and an objection will be treated as having excluded himself or herself from the settlement, and will have no standing to object.

If this Court grants final approval of the settlement, the settlement administrator will mail a settlement check to each settlement class member who submits a valid, timely claim.

This Court will conduct a final fairness hearing on **[date]**, at the United States District Court for the Southern District of Indiana, 46 East Ohio Street, Indianapolis, Indiana  46204 to determine:

A.    Whether this action satisfies the applicable prerequisites for class action treatment for settlement purposes under Rule 23;

B.    Whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the settlement class members and should be approved by this Court;

C.    Whether a final order and judgment, as provided under the Agreement, should be entered, dismissing the Lawsuit with prejudice and releasing the released claims against the released parties; and

D.    To discuss and review other issues as this Court deems appropriate.

Attendance by settlement class members at the final fairness hearing is not necessary. Settlement class members need not appear at the hearing or take any other action to indicate their approval of the proposed class action settlement. Settlement class members wishing to be heard are, however, required to appear at the final fairness hearing. The final fairness hearing may be postponed, adjourned, transferred, or continued without further notice to the class members.

Memoranda in support of the proposed settlement must be filed with this Court no later than thirty days before the final fairness hearing *i.e.*, no later **[date]**. Opposition briefs to any of the foregoing must be filed no later than fourteen days before the final fairness hearing, *i.e.*, no later than **[date]**. Reply memoranda in support of the foregoing must be filed with this Court no later than seven days before the final fairness hearing, *i.e.*, no later than **[date]**.

Memoranda in support of any petitions for attorneys' fees and reimbursement of costs and litigation expenses by class counsel, or in support of an incentive award, must be filed with this Court no later than thirty-five days before the deadline for settlement class members to object to, or exclude themselves from, the settlement (seventy days after this Court's entry of this Order), *i.e.*, no later than **[date]**. Opposition briefs to any of the foregoing must be filed no later than one hundred five days after entry of this Order, *i.e.*, no later than **[date]**. Reply memoranda in support of the foregoing must be filed with this Court no later than fourteen days after the deadline for settlement class members to object to, or exclude themselves from, the settlement, *i.e.*, no later than **[date]**.

The Agreement and this order will be null and void if any of the parties terminates the Agreement per its terms. Certain events described in the Agreement, however, provide grounds for terminating the Agreement only after the parties have attempted and completed good faith negotiations to salvage the settlement but were unable to do so.

If the Agreement or this order are voided, then the Agreement will be of no force and effect and the parties' rights and defenses will be restored, without prejudice, to their respective positions as if the Agreement had never been executed and this order never entered.

This Court retains continuing and exclusive jurisdiction over the action to consider all further matters arising out of or connected with the settlement, including the administration and

enforcement of the Agreement.

This Court sets the following schedule:

**[Date]**:                    Order Preliminarily Approving the Settlement Entered

**[Date]**:                    Defendant to fund Settlement Fund (thirty days after entry of Order Preliminarily Approving the Settlement)

**[Date]**:                    Notice Sent (sixty days after entry of Order Preliminarily Approving the Settlement)

**[Date]**:                    Attorneys' Fees Petition Filed (seventy days after entry of Order Preliminarily Approving the Settlement)

**[Date]**:                    Opposition to Attorneys' Fees Petition (one hundred five days after entry of Order Preliminarily Approving the Settlement)

**[Date]**:                    Deadline to Submit Claims, Send Exclusion, or File Objection (one hundred five days after entry of Order Preliminarily Approving the Settlement)

**[Date]**:                    Reply in Support of Attorneys' Fees Petition (fourteen days after the deadline for settlement class members to submit claims, object to, or exclude themselves from, the settlement)

**[Date]**:                    Motion for Final Approval Filed (thirty days before final fairness hearing)

**[Date]**:                    Opposition to Motion for Final Approval Filed (fourteen days before final fairness hearing)

**[Date]**:                    Class Administrator will provide a sworn declaration attesting to proper service of the Class Notice and Claim Forms, and state the number of claims, objections, and opt outs, if any (ten days prior to Final Fairness Hearing)

**[Date]**:                    Reply in support of Motion for Final Approval (seven days before final fairness hearing)

**[Date]:**                    Responses to any objection to the settlement (seven days before final fairness hearing)

**[Date]**:                    Final Fairness Hearing

IT IS SO ORDERED.

Dated:

_____
UNITED STATES DISTRICT COURT JUDGE

Exhibit "3"

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

|  |  |  |
|---|---|---|
| Brad Patterson, *on behalf of himself and others similarly situated,* | ) ) ) | Civil Action No.: 1:24-cv-00689-TWP-KMB |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| OptumRx, Inc., | ) ) | |
| Defendant. | ) ) | |

---

## (PROPOSED) ORDER FINALLY APPROVING CLASS ACTION SETTLEMENT

Brad Patterson ("Plaintiff") filed a class action complaint against OptumRx, Inc. ("Defendant") in the United States District Court for the Southern District of Indiana, No. 1:24-cv-00689 (the "Lawsuit"), asserting class claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

On or around **[date]**, after extensive arm's-length negotiations, Plaintiff and Defendant (the "Parties") entered into a written class action settlement agreement (the "Agreement"), ECF No. **[#]**, which is subject to review under Fed. R. Civ. P. 23.

On **[date]**, the Parties filed the Agreement, along with Plaintiff's unopposed motion for preliminary approval of class action settlement (the "Preliminary Approval Motion"). ECF No. **[#]**.

In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(D), 1453, and 1711-1715, Defendant served written notice of the proposed class settlement as directed.

On **[date]**, upon consideration of Plaintiff's Preliminary Approval Motion and the record, this Court entered an order preliminarily approving the class action settlement ("Order

1

Preliminarily Approving the Settlement"). Pursuant to the Order Preliminarily Approving the Settlement, this Court, among other things, (i) preliminarily approved the proposed settlement and (ii) set the date and time of the final fairness hearing. ECF No. **[#]**.

On **[date]**, Plaintiff filed his motion for attorneys' fees, costs, and expenses, and an incentive award. ECF No. **[#]**.

On **[date]**, Plaintiff filed his motion for final approval of class action settlement (the "Final Approval Motion"). ECF No. **[#]**.

On **[date]**, a final fairness hearing was held pursuant to Fed. R. Civ. P. 23 to determine whether the claims asserted in the Lawsuit satisfy the applicable prerequisites for class action treatment and whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the settlement class members and should be approved by this Court.

The Parties now request final certification of the settlement class under Fed. R. Civ. P. 23(b)(3) and final approval of the proposed class action settlement.

This Court has read and considered the Agreement, Final Approval Motion, and the record of these proceedings.

NOW, THEREFORE, IT IS HEREBY ORDERED:

The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties.

Pursuant to Fed. R. Civ. P. 23(b)(3), and for the reasons this Court included in the Order Preliminarily Approving the Settlement, the Lawsuit is finally certified, for settlement purposes, as a class action on behalf of the following settlement class members with respect to the claims asserted in the Lawsuit:

> All persons throughout the United States (1) to whom OptumRx, Inc. placed, or caused to be placed, a clinical adherence call, other than calls regarding prescription

refill reminders or calls regarding COVID-19 vaccines, (2) directed to a number assigned to a cellular telephone or VOIP service, but not assigned to an OptumRx, Inc. customer or account holder, (3) in connection with which OptumRx, Inc. used, or caused to be used, an artificial or prerecorded voice, (4) from April 20, 2020 through the date of preliminary approval of the settlement.

Pursuant to Fed. R. Civ. P. 23, this Court finally certifies Plaintiff as the class representative, and James L. Davidson of Greenwald Davidson Radbil PLLC ("GDR") and Anthony Paronich of Paronich Law, P.C. as class counsel.

Pursuant to this Court's Order Preliminarily Approving the Settlement, the approved class action notices were mailed. The form and method for notifying the settlement class members of the settlement and its terms and conditions were in conformity with this Court's Order Preliminarily Approving the Settlement and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and constituted the best notice practicable under the circumstances. This Court finds that the notice was clearly designed to advise settlement class members of their rights.

This Court again finds, for the reasons this Court included in the Order Preliminarily Approving the Settlement, that the settlement class satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23, namely:

A.    The settlement class members are so numerous that joinder of all of them in the Lawsuit is impracticable;

B.    There are questions of law and fact common to the settlement class members, which predominate over any individual questions;

C.    Plaintiff's claims are typical of the claims of the settlement class members;

D.    Plaintiff and class counsel have fairly and adequately represented and protected the interests of all settlement class members;

3

E.     Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy; and

F.     A class action is superior to other available methods for a fair and efficient adjudication of this controversy.

This Court finds that that the settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the settlement class members, when considering, in their totality, the following factors:

A.     The amount of opposition to settlement among affected parties:

B.     The likely complexity, length and expense of continued litigation:

Expert depositions and significant motion practice lay ahead, including briefing on Plaintiff's forthcoming motion for class certification, and likely competing motions for summary judgment. Given the considerable work already performed in this matter—and the work left to perform, including any appeals—settlement here is warranted.

C.     The stage of the proceedings and the amount of discovery completed:

The parties engaged in significant discovery, including written discovery and depositions of the parties, focused both on Plaintiff's individual claims and on those of absent settlement class members. The settlement was, therefore, consummated when the parties were well-informed regarding the strengths and weaknesses of their respective positions. Moreover, the parties reached an agreement to resolve this matter only after mediating Plaintiff's claims against Defendant with Hon. Diane M. Welsh (Ret.) of JAMS. The settlement is therefore not a product of collusion but was the result of arm's-length settlement negotiations, as directed by an experienced class action mediator.

D.     The strength of the plaintiff's case compared to the terms of the proposed settlement:

4

Despite obstacles, and with the assistance of a highly respected mediator, Plaintiff negotiated a settlement that compares favorably to other TCPA class action settlements. To be sure, the per-claimant recovery is in line with and in some cases exceeds that of other recently approved TCPA class action settlements. What's more, the settlement provides class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. Therefore, because of the settlement, settlement class members will receive money they otherwise would have likely never pursued on their own.

In the end, the settlement constitutes an objectively favorable result for settlement class members, and outweighs the mere possibility of future relief after protracted and expensive litigation.

E.  The opinion of competent counsel:

GDR and Paronich Law are highly experienced in class action litigation, particularly in cases under the TCPA. And GDR and Paronich Law firmly believe that the settlement is fair, reasonable, adequate, and in the best interests of class members.

The Court has also considered the following factors in finding that the settlement of this action, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the settlement class members:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

      (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Agreement, which is deemed incorporated into this order, is finally approved and must be consummated in accordance with its terms and provisions, except as amended by any order issued by this Court. The material terms of the Agreement include, but are not limited to, the following:

A.    <u>Settlement Fund</u> – Defendant established a $1,860,000 non-reversionary fund (the "Settlement Fund").

B.    <u>Deductions</u> – The following are to be deducted from the Settlement Fund before any other distributions are made:

    a.    The costs for the administration of the settlement and class notice;

    b.    A incentive award to the Plaintiff in the amount of $[#];

    c.    Class counsel's attorneys' fees, in the amount of $[#]; and

    c.    Reimbursement of class counsel's litigation costs and expenses in the amount of $[#].

C.    <u>Settlement Payments to Class Members</u> – Each settlement class member who has submitted a valid and timely claim form will receive compensation as set forth in the Agreement. Each settlement check will be void one-hundred twenty days after issuance.

The settlement class members were given an opportunity to object to the settlement. **[#]** settlement class members objected to the settlement or the requests for attorneys' fees, costs, or expenses. **[#]** settlement class members made a valid and timely request for exclusion.

This order is binding on all settlement class members, except the following individuals who made valid and timely requests for exclusion:

- **[names]**;

Plaintiff, settlement class members, and their successors and assigns are permanently barred from pursuing, either individually or as a class, or in any other capacity, any of the released claims against the released party, as set forth in the Agreement. Pursuant to the release contained in the Agreement, the released claims are compromised, settled, released, and discharged, by virtue of these proceedings and this order.

This final order and judgment bars and permanently enjoins Plaintiff and all members of the settlement class from (a) filing, commencing, prosecuting, intervening in or participating as a plaintiff, claimant or class member in any other lawsuit, arbitration or individual or class action proceeding in any jurisdiction (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), asserting the released claims, and (b) attempting to effect opt-outs of a class of individuals in any lawsuit or arbitration proceeding based on the released claims, except that settlement class members are not precluded from addressing, contacting, dealing with, or complying with requests or inquiries from any governmental authorities relating to the issues raised in this Lawsuit or class action settlement.

The Lawsuit is hereby dismissed with prejudice in all respects.

This order, the Agreement, and any and all negotiations, statements, documents, and proceedings in connection with this settlement are not, and will not be construed as, an admission by Defendant of any liability or wrongdoing in this or in any other proceeding.

This Court hereby retains continuing and exclusive jurisdiction over the Parties and all matters relating to the Lawsuit or Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this order, including the award of attorneys' fees, costs, disbursements, and expenses to class counsel.

For the reasons set forth in Plaintiff's motion for attorneys' fees, costs, and expenses, and an incentive award, ECF No. **[#]**, class counsel's request for an award of attorneys' fees of $**[#]** of the settlement fund, is approved, as is Plaintiff's request for an incentive award of $[#].

Class counsel's request for reimbursement of reasonable litigation costs and expenses in the total amount of $**[#]** is approved. *See id*.

IT IS SO ORDERED.

Dated:

_____
UNITED STATES DISTRICT COURT JUDGE

**Exhibit B**

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF INDIANA

3     _____

4     BRAD PATTERSON,

5              Plaintiff,

6          v.                    Case No.

7     OPTUMRX, INC.,             1:24-cv-00689-JPH-KMB

8              Defendant.

9     _____

10

11

12              DEPOSITION OF BRAD PATTERSON

13    DATE:         Friday, April 25, 2025

14    TIME:         12:03 p.m.

15    LOCATION:     Remote Proceeding

16                  Bloomington, IN 47403

17

18

19

20

21    REPORTED BY:

22    Melanie Malinowski, CDR

23    JOB No. 7277823

24

25    PAGES 1 - 98

                                        Page 1

```
1    conversation with your attorneys, go ahead.
2                    THE WITNESS:  I can't answer that
3    question.
4    BY MS. CULORA:
5         Q    You don't know why you decided to file the
6    class action?
7         A    I can't answer that question.
8         Q    Are you familiar with the term "class
9    representative"?
10        A    Yes.
11        Q    Who is the class representative in this
12   case?
13        A    I am.
14        Q    And do you agree to be the class
15   representative?
16        A    Yes.
17        Q    Are there any other class representatives in
18   this case?
19        A    No.
20        Q    What is your understanding of your duties
21   and responsibilities as a class representative?
22        A    I think we went through this already, once,
23   that I would inform everybody what's going on; that I
24   would help my attorneys -- documents and anything like
25   that that comes in handy; and performing depositions,
```

Page 91

```
 1    or even having to go to trial.
 2         Q    And to whom do you owe those duties and
 3    responsibilities?
 4         A    The people who OptumRX have broken the law
 5    to.
 6         Q    What do you mean by "broken the law"?
 7         A    Leaving -- calling people, leaving voice
 8    recordings, breaking the Telephone Consumer Protection
 9    Act.
10         Q    Do you know how the class action is defined
11    in this case?
12         A    Defined?
13              MR. OLIVER:  Objection, again, to the
14    form.
15    BY MS. CULORA:
16         Q    In other words, who falls within the class
17    that you're representing?
18         A    People who has received these calls without
19    their permission.
20         Q    Have you communicated with any other class
21    members about this litigation?
22         A    No, I have not.
23         Q    Do you understand that you have a duty to
24    protect the interest of absent class members?
25         A    Yes.
```

Page 92

1      Q    And are you prepared to serve in this

2    capacity?

3      A    Yes.

4      Q    And what have you done to protect the class

5    members and prosecute their claims?

6      A    I've only talked --

7              MR. OLIVER:  Objection.

8              THE WITNESS:  -- to my attorneys about

9    this class -- about the class action.

10             MR. OLIVER:  Hold On.  I'm sorry.

11   Mr. Patterson, just one moment please.

12             Objection as to the form of the

13   question.

14             Go ahead.  Just allow me time.  Thank

15   you.

16   BY MS. CULORA:

17     Q    Have you been offered any incentive to serve

18   as a class representative?

19     A    No.

20     Q    Are you expecting any compensation in

21   exchange for your time serving as a class

22   representative?

23     A    No.

24     Q    Are you expecting any other compensation?

25     A    Just from what the law states, the Telephone

Page 93

```
 1     Consumer Protection Act grants me.  That's it.
 2         Q    Okay.
 3                   MS. CULORA:  I think that's all I have
 4     for today, but let's just go off the record and go
 5     back on in about five minutes.  Does that work?
 6                   MR. OLIVER:  We can take a five-minute
 7     break, okay.
 8                   Yeah, if we could mute and --
 9     Mr. Patterson.  Thank you.
10                   THE REPORTER:  Sure thing.  And we are
11     off the record at 2:17 p.m.
12                   (Off the record.)
13                   THE REPORTER:  Okay.  We are back on
14     the record.  It's 2:21 p.m.
15                   MS. CULORA:  Mr. Patterson, I have no
16     further questions.  Thank you.
17                   THE WITNESS:  Thank you.
18                   MR. OLIVER:  Yes, we're fine.
19                   THE REPORTER:  Okay.  Then we are
20     officially off the record at 2:22 p.m.
21                   (Signature waived.)
22                   (Whereupon, at 2:22 p.m., the
23                   proceeding was concluded.)
24
25
```

Page 94