## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRAD PATTERSON, on behalf of himself and others similarly situated,<br><br>　　　　　　　　Plaintiff,<br>　　　v.<br><br>OPTUMRX, INC.,<br><br>　　　　　　　　Defendant. | Civil Case No.: 1:24-cv-689-TWP-KMB |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, LITIGATION EXPENSES, AND A SERVICE AWARD**

**Introduction**

Because of Brad Patterson's and his counsel's efforts in this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, OptumRx, Inc. ("Defendant") will create a non-reversionary, all-cash $1,860,000 common fund to compensate members of the settlement class ("Settlement Class Members"). After more than a year of litigation, and despite numerous risks and obstacles along the way, participating Settlement Class Members are expected to receive payments of between $72 and $135.

In line with the Court-approved class notice, Court-appointed Class Counsel seek an award of attorneys' fees in the amount of $580,796.42, which is equal to 31.2% of the total common fund, or 36% of the net common fund after deducting the costs of class notice and administration, the requested service award, and Class Counsel's costs and litigation expenses.[1] As well, Class Counsel respectfully request reimbursement of their costs and litigation expenses totaling $28,925.60. Additionally, Mr. Patterson seeks a service award of $10,000.

These requests are reasonable, justified, and in line with awards approved in similar TCPA class actions in this district and elsewhere nationwide. Moreover, following notice to Settlement Class Members, to date, no Settlement Class Member has objected to any part of the settlement or the requests for attorneys' fees, costs, expenses, or a service award. The deadline for objections is February 4, 2026.

Of note, there is no "clear sailing" provision here—Defendant has not agreed to Class Counsel's request for an award of attorneys' fees, costs, and expenses. As such, Defendant was free to oppose these requests. Moreover, this Court's approval of the requested awards is not a condition

---

[1]    Costs of class notice and settlement administration are expected to be $207,751. Subtracting notice-related costs, $28,925.60 for Class Counsel's costs and litigation expenses, and the requested service award of $10,000, leaves a net common fund of $1,613,323.40.

of the settlement.

**Argument**

I.     **A fee award of less than one-third of the total settlement fund—and 36% of the net settlement fund—is reasonable and justified.**

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[2] To that end, the Seventh Circuit "favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante*." *In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017).

Here, Class Counsel seek an award of attorneys' fees of $580,796.42, which is equal to 31.2% of the total common fund, or 36% of the net common fund. This request is supported by applicable case law both within and outside of the Seventh Circuit, and with respect to class actions generally, as well as those under the TCPA specifically.

A. **District courts in this circuit agree upon the percentage-of-the-fund method to calculate attorneys' fees awards in common fund cases like this one.**

According to the Seventh Circuit, "when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). "Because the market-price estimation is inherently conjectural, district courts have discretion to use either the percentage method, which awards fees as a percentage of the common fund, or the 'lodestar' method, which awards fees based on the

---

2      Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

2

attorneys' hours and billing rates . . . ." *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 939 (N.D. Ill. 2022).

In a TCPA class action like here, Judge Holderman reasoned that the percentage-of-the-fund method is "more likely to yield an accurate approximation of the market rate," and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015); *see also Johnson v. Navient Solutions, Inc., f/k/a Sallie Mae, Inc.*, No. 1:15-cv-0716-LJM, Doc. 177 (S.D. Ind. July 13, 2017) (McKinney, J) (approving fee application for percentage of the common fund in TCPA class action); *Charvat v. Valente*, No. 12-5746, 2019 WL 5576932, at *11 (N.D. Ill. Oct. 28, 2019) ("The Court agrees with Class Counsel that using the percentage-of-recovery method is preferable to the lodestar method in this instance."); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) ("The Court agrees with Kolinek's counsel that the fee award in this case should be calculated based on a percentage-of-the-fund method."). Underlying Judge Holderman's rationale: "An *ex ante* agreement based on lodestar requires a client to monitor counsel, and the class-member 'clients' here had little incentive to do so." *Capital One*, 311 F.R.D. at 501.

Indeed, the class members in *Capital One* numbered in the millions, each with minimal prospective relief, so "[t]he class would not have negotiated a compensation scheme that required a level of monitoring the class members were not interested in or capable of providing." *Id.*; *see also Kolinek*, 311 F.R.D. at 501 (noting that a large class of "lightly-injured plaintiffs" would be unlikely "to monitor counsel and ensure that counsel are working efficiently on an hourly basis," as required by the lodestar model). "Instead, the class would have chosen the compensation scheme that required the least monitoring to align the incentives of the class and its counsel—the percentage

3

method." *Capital One*, 80 F. Supp. 3d at 795.

And as Judge Alonso echoed in more recent TCPA class litigation:

> It is hard to imagine the class agreeing each to kick in an equal share of, say, $300 per hour multiplied by the number of hours it would take the attorneys to achieve a victory or settlement or, worse yet, a loss in this case, given that each stood to gain only a little. Much easier to imagine *ex ante* is the members' agreeing to a contingency fee to incentivize the attorneys to maximize the award to the class members.

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, No. 15-9025, 2019 WL 10248700, at *4 (N.D. Ill. Dec. 10, 2019) ("agree[ing] that a reasonable class of plaintiffs making an *ex ante* bargain would have agreed to pay the attorneys one third of the recovery").

The same is true here. And approximating the market rate through the percentage method can be informed by several factors, including: (1) the actual agreements between the parties as well as fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of class counsel's performance; (4) the amount of work necessary to resolve the litigation; (5) the stakes of the case; and (6) information from other cases, including fee awards in comparable cases. *See In re Broiler Chicken Antitrust Litig.*, No. 16-8637, 2022 WL 6124787, at *2 (N.D. Ill. Oct. 7, 2022).

**B. An award of attorneys' fees of 31.2% of the total common fund, or 36% of the net common fund, is in line with awards in class actions in this Circuit, including those under the TCPA.**

Looking first to comparable cases, Judge Kennelly in *Kolinek* found that the "market rate" for legal services in a TCPA class action was 36% of the net settlement fund "based on the degree of effort the attorneys would need to put in, the likelihood of success, and the risks associated with undertaking class representation . . . ." 311 F.R.D. at 502-03. It therefore follows that the requested fee here is consistent with awards in TCPA class litigation in this circuit. *See, e.g., Abante Rooter & Plumbing*, 2019 WL 10248700, at *4 (awarding $3,500,000, one-third of total common fund);

*Charvat*, 2019 WL 5576932, at *12 (awarding $3.15 million, 33.99% of net settlement fund); *Simms v. ExactTarget, LLC*, No. 14-737, 2018 WL 11416085, at *10 (S.D. Ind. Oct. 2, 2018) (awarding $2,073,750, 35% of net settlement fund) (Pryor, M.J.), *report and recommendation adopted,* No. 14-737, 2018 WL 11416084 (S.D. Ind. Oct. 19, 2018); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 202 (N.D. Ill. 2018) (awarding fees of 33.3% of $6,691,679 net settlement fund); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-4069, 2017 WL 1369741, at *9 (N.D. Ill. Apr. 10, 2017) (approving sliding scale for fees that included 36% of the first $10 million), *aff'd sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018); *Capital One*, 80 F. Supp. 3d at 807 (same); *Kolinek*, 311 F.R.D. at 503 (approving $2,824,200, 36% of net common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 12-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving $1,633,333.33, 36.3% of settlement's quantifiable value).

Underscoring the reasonableness of the fee award sought here, Judge Simon approved an award of attorneys' fees amounting to 36% of the net common fund—and 31.8% of the total common fund—in a similar class action under the TCPA. *Lucas v. Synchrony Bank*, No. 4:21-CV-70-PPS/JEM, 2023 WL 3143816, at *2 (N.D. Ind. Apr. 25, 2023) And Judge Mckinney approved an award of "one-third of the $19,744,650.00 settlement fund after deducting notice, administration, and litigation costs" in another similar TCPA class action. *Johnson*, No. 1:15-cv-0716-LJM, Doc. 177.[3]

**C. The award sought here also is consistent with awards of attorneys' fees in similar TCPA class actions nationwide.**

Comparable TCPA cases outside the Seventh Circuit similarly support Class Counsel's request as district courts assessing attorneys' fees in connection with TCPA class recoveries

---

[3]    Greenwald Davidson Radbil PLLC—co-Class Counsel here—was also Class Counsel in *Johnson*.

routinely approve awards upwards of one-third of the total common fund. *See, e.g.*, *Johnson v. United Healthcare Servs., Inc.,* No. 5:23-cv-00522-GAP-PRL, 2025 WL 1909337, at *4 (M.D. Fla. July 10, 2025) (awarding fees of one-third of total settlement fund); *Daugherty v. Credit Bureau Servs. Ass'n*, No: 4:23-cv-01728, 2025 WL 1618354, at *5 (S.D. Tex. June 6, 2025) (same); *Cornelius v. Deere Credit Servs., Inc.*, No.: 4:24-cv-25-RSB-CLR, 2025 WL 502089, at *3 (S.D. Ga. Feb. 13, 2025) (same); *Head v. Citibank, N.A.*, No. CV-18-08189-PCT-ROS, 2025 WL 226660, at *4 (D. Ariz. Jan. 14, 2025) (same); *Boger v. Citrix Sys., Inc.*, No. 19-cv-01234-LKG, 2023 WL 3763974, at *13 (D. Md. June 1, 2023) (same); *Miles v. Medicredit, Inc.*, No. 20-1186, 2023 WL 1794559, at *4 (E.D. Mo. Feb. 7, 2023) (same); *Wesley v. Snap Fin. LLC*, No. 20-148, 2023 WL 1812670, at *3 (D. Utah Feb. 7, 2023) (same); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 19-550, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding "a slight increase from the one-third benchmark"); *Sheean v. Convergent Outsourcing, Inc.*, No. 18-11532, 2019 WL 6039921, at *4 (E.D. Mich. Nov. 14, 2019) (awarding one-third of TCPA and FDCPA common funds); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-20048, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (awarding one-third of common fund); *Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (same); *Martinez v. Medicredit, Inc.*, No. 16-1138, 2018 WL 2223681, at *5 (E.D. Mo. May 15, 2018) (same); *Prater v. Medicredit, Inc.*, No. 14-159, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (same); *Hageman v. AT&T Mobility LLC*, No. 13-50, ECF No. 68 (D. Mont. Feb. 11, 2015) (awarding fees of one-third of common fund); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (same).

**D. Mr. Patterson and his counsel entered into a contingent attorneys' fee agreement, so the risk of non-payment to counsel was substantial.**

Turning next to the fee agreement between Mr. Patterson and his counsel and the risk of non-payment at the outset of the case, it is important to recognize that Mr. Patterson entered into a contingent attorneys' fee agreement with his counsel. *See* the attached Declaration of James L. Davidson in Support of Plaintiff's Motion for an Award of Attorneys' Fees, Costs, Litigation Expenses, and a Service Award ("Davidson Decl.") at ¶ 35. The agreement permitted Class Counsel to apply to this Court for an award of attorneys' fees in the event that a common fund was established for the benefit of the class. Conversely, without any recovery, counsel would be paid nothing for their efforts, nor reimbursed for their expenditures, no matter their investment of costs and time in this matter.

That the attorneys' fee arrangement in this case was contingent "weighs in favor of the requested attorneys' fees award, because '[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see also In re Broiler Chicken*, 2022 WL 6124787, at *3 ("A substantial award is warranted here as a proper incentive for high quality counsel to take on complex cases, requiring a massive investment of time and money, with such a high risk of non-payment.").

Indeed, even in ordinary cases "uncertain is the outcome," and the corresponding risk taken by counsel in connection with contingent fee arrangements—no assurance of payment—warrants a higher percentage of the fund. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008); *see also In re TikTok*, 617 F. Supp. 3d at 941 ("Larger contingency fees are generally needed to persuade lawyers to take riskier cases because there is a lower chance that they will receive anything at the end.").

7

And in the context of class actions, the inherent risk is multiplied:

> In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants an appropriate fee. The risks are inherent in financing and prosecuting complex litigation of this type, but Class Counsel undertook representation with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and expense involved in bringing this Action in light of the possibility of a recovery at an uncertain date, or of no recovery at all.

*Simpson v. Citizens Bank*, No. 12-10267, 2014 WL 12738263, at *7 (E.D. Mich. Jan. 31, 2014).

Correspondingly, the fee agreement between Mr. Patterson and his counsel, coupled with the risk that Class Counsel have litigated this case for over a year without receiving any payment for their efforts under that agreement, strongly supports the requested fee award.

**E. As in any TCPA class action, this case brought significant risks, including the challenging class-related questions underlying this matter.**

In the *Capital One* litigation, Judge Holderman performed an in-depth analysis of the risks associated with TCPA litigation to determine proper awards of attorneys' fees in TCPA class cases:

> Class Counsel in this case faced a variety of serious obstacles to success in bringing the lawsuit, and faced the real prospect of recovering nothing. First, it was quite possible that the discovery may have revealed that many class members acquiesced to receiving calls on their cell phones when they agreed to their cardholder agreements with Capital One. Some customers provided Capital One with their cell phone numbers as their primary contact numbers, arguably waiving any right not to receive debt-collection calls on their cell phone from Capital One. Second, at the outset of the litigation there was a serious question whether the Plaintiffs' claims could meet Rule 23's manageability requirement given that Capital One would have to review its records to determine which class members provided consent through cardholder agreements, which class members actually provided their cell phone numbers to Capital One, and whether each class member actually owned their cell phone number at the time Capital One called it using an autodialer. Third, as Capital One has noted throughout this litigation, there are presently petitions before the FCC urging the FCC to (1) revise the TCPA's definition of "automatic telephone dialing system" to exclude dialers like those used by Capital One, and (2) provide a safe harbor for all calls that Capital One inadvertently made to wrong numbers. Consequently, the longer this litigation were to continue, the longer Plaintiffs would be exposed to the possibility that the FCC would take action that might extinguish Plaintiffs' claims.

80 F. Supp. 3d at 805.

Many of these risks, such as evolving court interpretations of the TCPA, remain true today. To be sure, Mr. Patterson faced a number of significant hurdles in this case, some of which were difficult and novel. For example, Defendant strongly disputed that a class could be certified for litigation purposes. Worth mentioning, several district courts have refused to certify TCPA matters. *See, e.g.*, *Revitch v. Citibank, N.A.*, No. 17-6907, 2019 WL 1903247, at *2 (C.D. Cal. Apr. 28, 2019) (denying class certification and noting that "an evasive customer may reply with 'wrong number' when he answers a call regarding his delinquent account"); *Davis v. AT&T Corp.*, No. 15-2342, 2017 WL 1155350, at *5 (S.D. Cal. Mar. 28, 2017) ("[d]efendant has come forward with evidence that a call with a 'wrong number' notation proves nothing because many customers tell callers they have reached the wrong number, though the customer's number was dialed, as a 'procrastination tool' to avoid speaking on the phone"); *Tomeo v. CitiGroup, Inc.*, No. 13-4046, 2018 WL 4627386, at *10 (N.D. Ill. Sept. 27, 2018) (following *Davis*).

In addition, there was no guarantee that Mr. Patterson would prevail. To that end, Defendant asserted a number of defenses, including the "emergency purpose" exception—that its calls were made for an "emergency purpose" and thus exempted from liability under the TCPA. *See* ECF No. 22 at 11. The Federal Communications Commission ("FCC") has issued a number of orders attempting to define the scope of the TCPA's emergency purpose exception. *See, e.g.*, *In re Emergency Robocalls Related to Pandemic are Lawful Under TCPA*, 35 FCC Rcd. 2840, 2841 (2020).

Relevant then, during the course of this litigation, the Supreme Court issued a series of opinions that revisited the appropriate level of deference courts are to give agency interpretations of statutes like the TCPA. *See, e.g.*, *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) ("In an enforcement proceeding, a district court must independently determine

for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."). Given as much, how courts will interpret the TCPA's emergency purpose exception going forward is a large unknown that weighed on this litigation and had the potential to undermine Mr. Patterson's claims as well of those of the Class. *See*, *e.g.*, *Aguirre v. Optum Health Plan of Cal.*, No. EDCV 25-1161 JGB, 2025 WL 3190830, at *6 (C.D. Cal. Oct. 24, 2025) (finding that emergency purposes exception applied to calls purportedly placed to provide information about a doctor's visit, even though the calls were placed to a wrong number).

At bottom, the result here was far from certain. After analyzing the serious risks inherent with TCPA litigation, Judge Holderman determined that an appropriate risk-adjusted fee for TCPA class settlements is an award of 36 percent of the net common fund, up to the first $10 million in recovery. *Capital One*, 80 F. Supp. 3d at 807. Given the presence of many of the same risks here, the requested fee award is fair and reasonable and should be approved.

**F. Class Counsel undertook substantial work to drive this case toward resolution.**

The caliber of Class Counsel's performance in completing the work necessary to achieve a settlement here further underscores the reasonableness of the requested fee. As outlined in Mr. Davidson's declaration, Class Counsel devoted more than a year to litigating this case without any payment, committing significant time and resources along the way, including: (a) conducting an investigation into the underlying facts regarding Mr. Patterson's claims and class members' claims; (b) preparing a class action complaint; (c) researching the law pertinent to class members' claims and Defendant's defenses; (d) negotiating a protective order; (e) preparing and serving written discovery requests; (f) reviewing Defendant's responses and objections to written discovery requests and related documents produced by Defendant; (g) preparing for the corporate

representative deposition of Defendant pursuant to Rule 30(b)(6); (h) preparing Plaintiff for his deposition; (i) engaging in extensive meet-and-confer efforts regarding Defendant's discovery responses and document production; (j) preparing Plaintiff's Statement of Claims; (k) attending status conferences with defense counsel and Magistrate Judge Barr; (l) retaining two experts and assisting in the preparation of their reports; (m) preparing for and attending mediation with Judge Welsh, including preparing a detailed mediation statement; (n) preparing and negotiating the parties' class action settlement agreement, along with the proposed class notices and claim forms; (o) negotiating with class administration companies to secure the best notice plan practicable; (p) researching and preparing Mr. Patterson's motion for preliminary approval of the class action settlement, and counsel's declaration in support; (q) closely monitoring evolving TCPA case law and its potential impacts on this case; (r) conferring with the class administrator to oversee the notice, claims, and administration process; and (s) repeatedly conferring with Mr. Patterson throughout this case. Davidson Decl. at ¶ 37.

Without counsel's diligent efforts over more than a year-long period, there would be no recovery for the Settlement Class. And while counsel's past efforts in this case were substantial, significant work remains. *See id*. at ¶ 38 (additional tasks include responding to class member inquiries, overseeing the notice and claims process, preparing Mr. Patterson's motion for final approval of the class action settlement, responding to class member objections, if any, preparing for and attending the final fairness hearing, and, if approved, overseeing the process of providing settlement payments to participating Settlement Class Members). Given the foregoing, the requested fee award is reasonable and should be approved.

### G. Class Counsel are highly experienced consumer protection class litigators who leveraged that experience to obtain efficient, excellent results.

Class Counsel bring significant experience litigating class actions filed under federal

consumer protection statutes, including the TCPA. *See id.* at ¶¶ 7-33; *see also* the attached Declaration of Anthony Paronich in Support of Plaintiff's Motion for Attorney's Fees and Service Award ("Paronich Decl.") at ¶ 10. Indeed, Greenwald Davidson Radbil PLLC has been appointed class counsel in dozens of class actions nationwide, having helped to recover more than $200 million for aggrieved class members over the past eight years. *See* Davidson Decl. at ¶¶ 7-8.

Through their extensive experience, Class Counsel have earned themselves stellar reputations in this practice area. Further, counsel's knowledge of, and experience with, TCPA class actions helped to bring about the common fund in an efficient manner. Where "Class Counsel's knowledge and experience . . . significantly contributed to a fair and reasonable settlement, this factor supports a request for a large amount of attorneys' fees." *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012).

In the face of significant legal hurdles, Class Counsel and Mr. Patterson obtained an excellent result for Settlement Class Members. To be sure, this settlement exceeds, on a per-potential class member basis, many similar and recently approved TCPA class action settlements. Specifically, dividing the Settlement Fund ($1,860,000) by 130,876 (the maximum number of potentially affected telephone numbers) amounts to $14.21 per potential Settlement Class Member.

In comparison, other TCPA class actions have settled for significantly less on a per-potential class member basis. *See, e.g.*, *Miles*, 2023 WL 1794559 ($6.42 per potentially affected telephone number); *Lucas v. Synchrony Bank*, No. 4:21-cv-70-PPS, ECF No. 47 (N.D. Ind. Nov. 18, 2022) (approximately $13 per potentially affected telephone number); *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) ($7 per potential class member); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227-28 (N.D. Ill. 2016) (just over $1 per person);

*Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (less than $5 per person).[4]

And on a per-claimant basis, the recovery is expected to exceed numerous other recently approved TCPA class action settlements. Class Counsel estimates—based on the likely number of *bona fide* Settlement Class Members[5]—participating Settlement Class Members are likely to receive between $72 and $135. *Accord Miles*, 2023 WL 1794559 (approximately $157 per claimant); *Gehrich*, 316 F.R.D. at 228 ($52.50 per claimant); *Charvat*, 2019 WL 5576932, at *16 (average of $22.17 per claim); *Leung*, 326 F.R.D. at 196 ($100.81 per claim); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45); *Capital One*, 80 F. Supp. 3d at 789 (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action). Also significant, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action—far less than the expected recovery here—as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017).

Moreover, the settlement provides Settlement Class Members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to

---

[4]     *See also, e.g.*, *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15).

[5]     Because this case involves prerecorded voice messages to alleged wrong numbers, the true number of Settlement Class Members who received prerecorded voice messages from Defendant despite not having an insurance plan with Defendant, is unknown to the parties at this time. For this reason, Settlement Class Members must submit a short, straightforward claim form to participate in any recovery.

incentivize individual actions. *See, e.g.*, *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the settlement, Settlement Class Members will receive money they otherwise likely would have never pursued on their own. In sum, the settlement constitutes an objectively favorable result for Settlement Class Members, given the real risks involved, and amply supports an award of attorneys' fees in the amount of 31.2% of the common fund.

II.    **This Court should approve the reimbursement of costs and litigation expenses in the amount of $28,925.60.**

"It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation." *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014).

Here, Class Counsel incurred costs and litigation expenses in the total amount of $28,925.60 in connection with this matter, which includes mediation costs, expert costs, court reporter costs, filing fees and costs for service of process. *See* Davidson Decl. at ¶¶ 41-43; *see also* Paronich Decl. at ¶ 14.

These categories of expenses for which Class Counsel seek reimbursement are of the type routinely charged to paying clients in the marketplace and, therefore, are properly reimbursed under Rule 23. *See, e.g.*, *Lucas*, 2023 WL 3143816, at *2 (approving reimbursement of $10,332.75 in costs and litigation expenses in TCPA class action); *Leung*, 326 F.R.D. at 199, 203 (approving reimbursement of $52,458.90 in expenses in TCPA class action for costs including copying, legal research, and telephone charges); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the

court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.").

This Court accordingly should approve reimbursement of Class Counsel's litigation costs and expenses. To date, no Settlement Class Members have objected to such reimbursement.

**III.    Mr. Patterson's request for a service award in the amount of $10,000 is fair, reasonable, and supported by law.**

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *In re Broiler Chicken*, 2022 WL 6124787, at *4 (awarding multiple $15,000 service awards); *accord Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 service award); *Fellows v. Am. Campus Cmtys. Servs., Inc.*, No. 16-1611, 2018 WL 3056046, at *7 (E.D. Mo. June 20, 2018) ("Courts routinely grant service awards in connection with class action settlements to promote the public policy underlying class action litigation by encouraging individuals to vindicate rights on behalf of a others similarly situated."). "In determining the need for an award, the court can consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Leung*, 326 F.R.D. at 205 (approving $10,000 service award).

Here, Mr. Patterson took pride in protecting the interests of Settlement Class Members, and he spent considerable time pursuing their claims. From the outset, Mr. Patterson was dedicated to pursuing this matter as a class action rather than an individual case. The end result—over a year later—is the recovery of $1,860,000 for Settlement Class Members, which will lead to significant cash payments to consumers who received prerecorded calls from Defendant.

Mr. Patterson remained actively involved throughout this case and frequently communicated with his counsel for updates and strategic decisions. Davidson Decl. at ¶¶ 44-45. He responded to

written discovery, sat for deposition, and participated in the parties' mediation. *Id*. at ¶ 45. Moreover, like other class representatives, he was subjected to potential public scrutiny throughout the process.

"True, this is not a monumental effort, but it is more inconvenience than the average consumer would want to put up with in the absence of an incentive to do so. [Mr. Patterson's] participation benefitted the class by allowing this case to be brought, which resulted in substantial settlement payouts to the class." *Leung*, 326 F.R.D. at 205. To be sure, "[t]he requested $10,000 award is also in line with the awards generally handed out in TCPA cases." *Id.*; *see also Ossola v. Am. Express*, No. 13-4836, ECF No. 379 at ¶ 11 (N.D. Ill. Dec. 2, 2016) ($10,000 service award in TCPA class case); *Martin v. JTH Tax, Inc.*, No. 13-6923, 2015 WL 13883998, at *3 (N.D. Ill. Sept. 16, 2015) (same).

Given all of the foregoing, the requested service award of $10,000 is reasonable and should be approved. *See, e.g.*, *Boger*, 2023 WL 3763974, at *11 ("The amount of the Service Payment to Mr. Boger—$10,000—is also on the lower end of incentive awards that courts have approved in comparable TCPA matters."); *Lucas*, 2023 WL 3143816, at *2 ("The Court finds the payment of a service award in the amount of $10,000 to the Settlement Class Representative is fair and reasonable."); *Hayes v. Thor Motor Coach, Inc.*, No. 3:19-CV-375-DRL-MGG, 2022 WL 4137227, at *2 (N.D. Ind. Jan. 12, 2022) (noting $10,000 service award); *Allegretti*, 2022 WL 484216, at *2 ($15,000 service awards in ERISA action where the plaintiffs "responded to document requests and interrogatories, reviewed and approved pleadings, and participated in settlement discussions"); *Charvat*, 2019 WL 5576932, at *10 ($25,000 TCPA service award for "endur[ing] several years of discovery, scrutiny, and inconvenience in pursuit of this case"); *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-8285, ECF No. 93 at ¶ 18 (N.D. Ill. Oct. 21, 2015) ($25,000 TCPA service award); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (awards of $10,000 to $25,000 where "the Named Plaintiffs initiated the action, took on a substantial

16

risk, and remained in contact with Class Counsel"); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) ($25,000 TCPA award); *Martin*, 2014 WL 9913504, at *3 ($20,000 TCPA award); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, ECF No. 243 at ¶ 20 (N.D. Ill. Feb. 27, 2013) ($30,000 awards).

## Conclusion

Mr. Patterson and Class Counsel respectfully request that this Court grant their requests for (1) an award of attorneys' fees of $580,796.42; (2) reimbursement of costs and litigation expenses in the amount of $28,925.60; and (3) a service award of $10,000 for Mr. Patterson for his dedicated efforts to the Settlement Class. To date, there are no objections to any of the foregoing.

## Certificate of Conferral Pursuant to LR 7-1(g)

Undersigned counsel has conferred with counsel for Defendant, who does not intend to oppose this motion.

Date: December 30, 2025

*/s/ James L. Davidson*
James L. Davidson
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Class Counsel*